In the

# United States Court of Appeals

### For the Seventh Circuit

No. 11-1971

LORENE MANN,

*Plaintiff-Appellant,*

*v.*

MELDON VOGEL, et al.,

*Defendants-Appellees.*

Appeal from the United States District Court
for the Central District of Illinois.
No. 4:10-cv-04042-MMM-JAG—**Michael M. Mihm**, *Judge.*

SUBMITTED OCTOBER 30, 2012—DECIDED FEBRUARY 22, 2013

Before BAUER, FLAUM, and WOOD, *Circuit Judges*.

BAUER, *Circuit Judge*. This case involves complaints of due process violations against employees of the Illinois Department of Children and Family Services (DCFS). In August 2008, DCFS initiated an investigation after receiving complaints of child abuse and neglect against Lorene Mann and her day care center. During the investigation, Mann stopped operating her day care center pursuant to a protective plan agreed to between Mann and DCFS. The investigation led to a finding

that Mann had failed to provide proper supervision of the children at the day care center, in violation of the Illinois licensing standards for day care facilities. DCFS recommended that Mann's day care license be revoked but, after an informal review, allowed Mann to enter into corrective plan to rectify the violation. Shortly thereafter, Mann filed an appeal of DCFS's conclusion that she violated the licensing standards; the Administrative Law Judge granted her request and expunged the finding.

Mann then filed suit against the DCFS employees involved and the State of Illinois, contending that she was deprived of a protected liberty interest without due process during the pendency of the investigation and review.

The district court dismissed the State of Illinois on sovereign immunity grounds; Mann does not appeal that decision. The district court also granted the DCFS employees' motion to dismiss, concluding that Mann's allegations were insufficient to state a claim for a due process violation. Mann amended her complaint; the district court dismissed that complaint with prejudice.

We agree with the district court that Mann did not adequately plead a violation of due process rights and affirm the dismissal of the suit.

## I. BACKGROUND

Mann owns and operates the Rainy Day Care Center (the Center) out of her personal residence in Rock Island, Illinois. On August 20, 2008, Mann temporarily

left the Center to purchase groceries for the home. The Amended Complaint is not clear as to how many children were at the Center when Mann left, but her husband, a licensed day care provider, and Sharon Thompson, a newly-hired day care assistant, remained at the Center to supervise the children. While Mann was gone, her husband left the children with Thompson in the basement level of the home while he was absent for approximately twenty to thirty minutes. While Mann's husband was gone, Thompson left the basement and went to the first floor to prepare food for the children. She remained out of the basement for approximately eight to ten minutes. During the time that Mann's husband and Thompson were both out of the basement, one child hit another child with a high-chair tray, which caused minor bruising to the other child's face. When Mann, Mann's husband, and Thompson discovered this or how they reacted to the incident is not clear from the Amended Complaint.

The next day, on August 21, a complaint was made to DCFS about the child's injuries. DCFS opened an investigation and visited the Center later that day in accordance with the rules governing complaints against licensed child care facilities in Illinois. *See* 89 ILL. ADMIN. CODE § 383.35(b). The initial investigation revealed that Thompson was working without the completion of a background search or a medical evaluation. Meldon Vogel, a Licensing Supervisor for DCFS, determined that Mann had failed to provide proper supervision to the children at the Center by leaving them in the care of Thompson, an unlicensed assistant. Instead of immedi-

ately moving to close the Center or revoke Mann's license, Vogel presented Mann with a protective plan. *See* § 383.45.

Mann entered into the protective plan with DCFS, which shut down the Center and required that the children be removed from the Center.[1] The protective plan also prohibited Mann and her husband from providing any child care services until the conclusion of a full DCFS investigation and the entry of a corrective plan. And at some point, DCFS entered Mann's name into the Illinois state database concerning child abuse and neglect based on its finding that Mann had failed to properly supervise the children at the Center; the Amended Complaint does not specify when this occurred.

An investigation of a licensed child care facility is to be completed within thirty days after receipt of a complaint; however, it may be extended for an additional thirty days upon written notice to the licensee. *See* § 383.35(b). On September 11, 2008, DCFS formally extended its investigation by an additional thirty days.

On December 19, 2008, DCFS completed its investigation into the complaint and concluded that the alleged licensing violation was "substantiated." *See* § 383.35(d) ("At the conclusion of the licensing complaint investigation, the licensing representative shall make a deter-

---

[1] The record does not contain a copy of the protective plan, so the information regarding the protective plan's terms is taken from Mann's Amended Complaint.

mination and enter a finding of 'substantiated' or 'unsubstantiated' with regard to each allegation in the complaint and shall document these findings."). In Illinois, a substantiated finding may also be referred to as an "indicated" report of child abuse or neglect. *See Dupuy v. Samuels* (*Dupuy I*), 397 F.3d 493, 497 (7th Cir. 2005).

On January 6, 2009, Richard Sherrard, a DCFS Licensing Supervisor, conducted a supervisory review of the determination. *See* 89 ILL. ADMIN. CODE § 383.35(g). Mann attended the supervisory review but was not represented by counsel. On January 12, 2009, Sherrard determined that the indicated lack of adequate supervision was a violation of the Illinois licensing standards and recommended that Mann's day care license be revoked.

On February 18, 2009, approximately six months after the initial complaint, Kim Morgan, a DCFS Interim Central Region Licensing Administrator, granted Mann an informal review of the indicated report and of Sherrard's recommendation that Mann's license should be revoked. On March 6, 2009, Morgan determined that Mann had violated the licensing standards by failing to provide adequate supervision but concluded that a corrective plan should be instituted rather than a revocation of Mann's license. A corrective plan is a document that lists the violations a licensee or permit holder must correct and a time frame for correcting the violations. § 383.50(a). (It is not required when the supervising agency determines the violations cannot be corrected or an administrative order of closure has been issued. § 383.50(c)-(d).) Mann entered into a corrective plan with DCFS on March 20, 2009.

Sometime after Morgan's decision, Mann filed an appeal to have the indicated report expunged and her name removed from the central database. *See* § 336.80. On April 7, 2009, DCFS conducted a hearing of Mann's appeal.

The Administrative Law Judge ruled in Mann's favor and expunged the indicated finding of inadequate supervision.

On April 6, 2010, Mann initiated a lawsuit in the Rock Island Circuit Court against Vogel, Sherrard, and the State of Illinois for indemnifying Vogel and Sherrard in accordance with 5 ILL. COMP. STAT. 350/2.[2] Mann brought her claim under 42 U.S.C. § 1983 and alleged that the Defendants improperly terminated the operation of the Center and violated her constitutional rights by depriving her of a protected liberty interest without due process. The case was removed to the U.S. District Court for the Central District of Illinois on May 12, 2010.

Vogel and Sherrard filed a Rule 12(b)(6) motion to dismiss, contending that Mann failed to state a claim against them and, alternatively, that they were entitled to qualified immunity. On January 24, 2011, the district court granted the motion to dismiss without prejudice, which provided Mann with an opportunity to cure her complaint's deficiencies.

Mann filed her Amended Complaint on January 26, 2011, in which she alleged that the Defendants violated

---

[2] The State of Illinois was previously dismissed from the case, and it is not a party to this appeal.

her due process rights in the following respects: (1) issued an improper protective plan and indefinitely closed the Center without a hearing before she agreed to the plan or could contest the plan's terms; (2) failed to issue an order of closure directing her to immediately stop operating the facility; (3) failed to initiate proceedings to revoke her license within ten days of a finding that the Center jeopardizes the health, safety, morals, or welfare of children; (4) failed to conduct a timely investigation of the complaint; and (5) improperly and indefinitely closed the Center as a result of a meritless allegation.[3]

The Defendants filed a second motion to dismiss, which the district court granted with prejudice on March 29, 2011. The district court concluded that Mann was not unconstitutionally deprived of a protected liberty interest as it relates to the imposition of the protective plan. The district court also looked to whether Mann was deprived of due process when she was prohibited from running her day care facility during the pendency of the DCFS investigation; the court concluded she was not.

On appeal, Mann contends that the district court erred in dismissing her Amended Complaint, claiming she had sufficiently pleaded a cause of action for a due process violation.

---

[3] Mann also claimed that Vogel engaged in harassing behavior towards her, but we do not see how the facts alleged support a due process violation on that ground. Accordingly, we reject this claim without further discussion.

## II. DISCUSSION

We review *de novo* the district court's dismissal of Mann's Amended Complaint pursuant to Rule 12(b)(6), construing the allegations in the light most favorable to Mann, accepting all well-pleaded facts as true, and drawing all reasonable inferences in favor of Mann. *See Citadel Grp. Ltd. v. Wash. Reg'l Med. Ctr.*, 692 F.3d 580, 591 (7th Cir. 2012). To survive the Defendants' motion to dismiss, Mann's Amended Complaint must contain sufficient factual information "to 'state a claim to relief that is plausible on its face.' A claim has facial plausibility when the plaintiff pleads factual content that allows the court to draw the reasonable inference that the defendant is liable for the misconduct alleged." *Ashcroft v. Iqbal*, 556 U.S. 662, 679 (2009) (quoting *Bell Atl. Corp. v. Twombly*, 550 U.S. 544, 556, 570 (2007)) (internal citation omitted).

"The Due Process Clause of the Fifth and Fourteenth Amendments prohibits deprivation of life, liberty, and property without due process of law." *Matamoros v. Grams*, No. 12-2045, 2013 U.S. App. LEXIS 1965, at *13 (7th Cir. Jan. 29, 2013) (citing U.S. CONST. amends. V, XIV). Mann contends that the imposition of the protective plan and the Defendants' investigation and subsequent review of the complaint against her violated her right to due process. But to properly plead a due process claim under § 1983, Mann must sufficiently allege (1) that she had a cognizable liberty interest under the Four-teenth Amendment; (2) that she was deprived of that liberty interest; (3) and that the deprivation was

without due process. *See Khan v. Bland*, 630 F.3d 519, 527 (7th Cir. 2010); *Polenz v. Parrott*, 883 F.2d 551, 555 (7th Cir. 1989).[4] We analyze whether Mann's allegations satisfy these elements in turn.

## A.  Protected Liberty Interest

We first look to whether Mann has adequately alleged a protected liberty interest. Mann's Amended Complaint says that she was "deprived . . . of her liberty and/or property interest in continued business operation in her chosen field of occupation and the maintenance of her good reputation in the local community in violation of her rights under the Fourteenth Amendment of the United States Constitution." We have previously stated:

> It is well-settled that an individual has no cognizable liberty interest in his reputation; consequently, when a state actor makes allegations that merely damage a person's reputation, no federally protected liberty interest has been implicated. *See Paul v. Davis*, 424 U.S. 693, 711-12 (1976); *Hojnacki v. Klein-Acosta*, 285 F.3d 544, 548 (7th Cir. 2002). Indeed, "mere defamation

---

[4]  Mann must also establish that a state actor was the individual who deprived her of the protected liberty interest. *Doyle v. Camelot Care Ctrs., Inc.*, 305 F.3d 603, 616 (7th Cir. 2002). Because Mann alleges that Vogel and Sherrard were acting within the scope of their employment as agents of DCFS during the pendency of the allegations in the Amended Complaint, we presume that they were in fact state actors.

by the government does not deprive a person of liberty protected by the Fourteenth Amendment, even when it causes serious impairment of one's future employment." *Hojnacki*, 285 F.3d at 548 (internal quotations and citations omitted). Rather, it is only the "alteration of legal status," such as governmental deprivation of a right previously held, "which, combined with the injury resulting from the defamation, justifies the invocation of procedural safeguards." *Paul*, 424 U.S. at 708-09; *Townsend v. Vallas*, 256 F.3d 661, 669 (7th Cir. 2001). As such, when a state actor casts doubt on an individual's "good name, reputation, honor or integrity" in such a manner that it becomes "virtually impossible for the [individual] to find new employment in his chosen field," the government has infringed upon that individual's liberty interest to pursue the occupation of his choice.

*Dupuy I*, 397 F.3d at 503 (quoting *Doyle*, 305 F.3d at 617).

This has become known as the "stigma plus" test. S*ee Schepers v. Comm'r, Ind. Dep't of Corr.* 691 F.3d 909, 914 (7th Cir. 2012) ("The need to show alteration of legal status along with some stigmatic or reputation injury is commonly referred to as the 'stigma plus' test." (quoting *Khan*, 630 F.3d at 534 (internal quotation marks omitted))).

   Here, the protective plan, which we presume described that Mann was the subject of an investigation into child abuse or neglect, prohibited Mann from operating the Center. Likewise, the finding that the indicated report of

a lack of adequate supervision was a violation of the licensing standards labeled Mann as a violator of the Illinois child care laws and regulations and also prevented her from operating the Center. We believe Mann has sufficiently pleaded the requirements of the "stigma plus" test—(1) damage to her good name, reputation, honor, and integrity (e.g., being labeled as a possible child abuser), and (2) the inability to pursue the occupation of her choice because of the label (i.e., employment in the child care field)—to put a protected liberty interest at issue. *See Dupuy I*, 397 F.3d at 503; *Munson v. Friske*, 754 F.2d 683, 693 (7th Cir. 1985).

### B.  Deprivation of a Protected Liberty Interest

A deprivation of a protected Fourteenth Amendment liberty interest occurs when "a right or status previously recognized by state law [is] distinctly altered or extinguished." *Paul*, 424 U.S. at 711; *see Hannemann v. S. Door Cnty. Sch. Dist.*, 673 F.3d 746, 753-55 (7th Cir. 2012). In determining whether Mann was deprived of a liberty interest, we recognize that Mann's allegations of wrongdoing relate to two distinct issues: (1) the imposition of the protective plan; and (2) the process by which DCFS investigated and reviewed the complaint against her. Nonetheless, prior to the imposition of the protective plan and the investigation of the complaint, Mann was able to operate the Center under Illinois law; she was prohibited from doing so after. We believe Mann has sufficiently alleged a deprivation of a protected liberty interest as it relates to all her allegations.

## C. Due Process

The final issue is whether the deprivation occurred without due process. We balance three factors to answer that question: "[f]irst, the private interest that [was] affected by the official action; second, the risk of erroneous deprivation of such interest through the procedures used, and the probable value, if any, of additional or substitute procedural safeguards; and finally, the Government's interest, including the function involved and the fiscal and administrative burdens that the additional or substitute procedural requirement would entail." *Mathews v. Eldridge*, 424 U.S. 319, 335 (1976). In this case, we balance Mann's right to employment in the field of her choice, with the procedures afforded to her and the additional procedures she claims were necessary, in conjunction with the state's strong interest in protecting children from abuse and neglect.

### 1. The Protective Plan

Mann contends that she was entitled to a hearing before the imposition of the protective plan and another after she entered into the plan in order to contest its terms. A protective plan is presented to the operator of a licensed day care facility when:

> (1) a pending formal child protection investigation names the individual as an alleged perpetrator; (2) the licensing representative determines that contact between the children in care and the individual presents an ongoing risk to the children, but that

the health, safety and best interests of the children do not require closure of the program or facility . . . ; or (3) after a monitoring visit, the licensing representative documents a violation that requires a protective plan to restrict contact between the children in care and the individual to assure the health, safety and best interests of the children while the licensee is provided an opportunity to correct the violation.

89 ILL. ADMIN. CODE § 383.45(a)(1)-(3).

It is similar to a safety plan, which is often offered in the context of parental child abuse or neglect. *See Dupuy v. Samuels* (*Dupuy II*), 465 F.3d 757, 760 (7th Cir. 2006) ("But sometimes, in lieu of immediately removing the child from its parents, the state will offer parents the option of agreeing to a 'safety plan,' under which restrictions short of removal are imposed pending completion of the state's investigation into abuse or neglect."). We have described a safety plan as an optional form of relief akin to an "interim settlement agreement pending the outcome of [an] investigation;" "[i]t imposes no obligation on anybody." *Id.* at 761. The same is true of a protective plan. The individual is not required to enter into the protective plan, and the individual can opt out of it at any point. Thus, Mann's contention that she was entitled to a hearing before the issuance of the protective plan and a hearing after to challenge its terms cannot be sustained.

We were clear in *Dupuy II* why a hearing before entering into a plan is not required: "There is no right to a hearing when no substantive right has been infringed

or is threatened with being infringed. The state does not force a safety plan on the parents; it merely offers it. Parents are entitled to a hearing if their parental rights are impaired, and the offer of settlement no more impairs those rights than a prosecutor's offer to accept a guilty plea impairs the defendant's right to trial by jury." *Id.* If anything, the point is stronger in this case because a parent's right to "familial relations" is more significant than the right to pursue employment in the field of one's choice. *See Doe v. Heck*, 327 F.3d 492, 520 (7th Cir. 2003) (stating that courts apply "some form of heightened scrutiny" when analyzing claims alleging a violation of the fundamental right to familial relations). The safety of one's children in the care of another is of the utmost importance, and the state must work quickly to avoid possible abuse or neglect. *See Siliven v. Ind. Dep't of Child Servs.*, 635 F.3d 921, 928 (7th Cir. 2011) (explaining that a child may be removed from his home if the facts and circumstances known to the state demonstrate that the child is in immediate physical danger). Accordingly, Mann was not entitled to a hearing before agreeing to the protective plan.

Furthermore, Mann was not entitled to a hearing to contest the protective plan's terms. Mann voluntarily agreed to stop operating the Center, and her consent rendered a subsequent hearing to contest the plan's terms unnecessary. *See Dupuy II*, 465 F.3d at 761-62 ("Because the safety plan is voluntary, no hearing of any kind is necessary; hearings are required for deprivations taken over objection, not for steps authorized by consent."); *see also Smith v. Williams-Ash*, 520 F.3d 596, 599-600 (6th Cir.

2008) (adopting the reasoning described in *Dupuy II*). But in any event, Mann's assertion that she had no opportunity to have the protective plan's requirements reviewed is incorrect. *See* 89 ILL. ADMIN. CODE § 383.45(c) (explaining that a protective plan "shall be reviewed by the licensing supervisory every [six] months"). Mann's protective plan was reviewed within the time frame prescribed (on January 6, 2009, approximately four-and-a-half months after she entered into it), which we believe was more than reasonable given the basis for the complaint against her.

To the extent Mann argues in her brief that the protective plan was not presented to her in a way that suggested it was voluntary, the Amended Complaint does not describe how she was coerced into the protective plan. That DCFS told her "it would be in the best interest to cooperate with DCFS's actions" does not mean DCFS "coerced" her into a settlement. It was merely threatening to enforce the rights it was legally entitled to enforce, which we have found to be permissible. *See Dupuy II*, 465 F.3d at 762. We recognize that a threat may be coercive if the agency has no lawful authority to make the threat (especially if it involves one's own children, *see, e.g.*, *Hernandez v. Foster*, 657 F.3d 463, 482-84 (7th Cir. 2011); *Siliven*, 635 F.3d at 926; *Croft v. Westmoreland Cnty. Children & Youth Servs.*, 103 F.3d 1123, 1125 n.1 (3d Cir. 1997)), but DCFS was acting on a complaint regarding events that Mann acknowledges occurred. It was not acting "without a suspicion of neglect or abuse"—to be discussed further below. *Cf. Hernandez*, 657 F.3d at 482-84. The facts alleged

here do not support an inference that Mann did not voluntarily enter into the protective plan.

Mann's allegation that she was entitled to a hearing before agreeing to the protective plan and after to contest its terms cannot survive the motion to dismiss.


### 2.  The Investigation, Review, and Expungement Appeal

Each of the remaining allegations relates to procedures Mann believes were required during the pendency of the investigation, review, and subsequent expungement appeal, but they all fail to state a claim that Mann's due process rights were violated.

Mann says that due process required the Defendants to (1) issue an order of closure directing her to immediately stop operating the facility, and (2) initiate proceedings to revoke her license within ten days of a finding that the Center jeopardizes the health, safety, morals, or welfare of children. These claims find their roots in 225 ILL. COMP. STAT. 10/11.2, which provides in part:

> Whenever the Department *expressly finds* that the continued operation of a child care facility . . . jeopardizes the health, safety, morals, or welfare of children served by the facility, the Department shall issue an order of closure directing that the operation of the facility terminates immediately, and, if applicable, shall initiate revocation proceedings under Section 9 within ten working days.

(emphasis added).

Mann contends that the Defendants neither issued an order of closure nor initiated revocation proceedings against her. We assume that to be true. Mann, however, ignores two important words in the provision: expressly finds. As the district court concluded in its original motion to dismiss order, Mann does not allege that such findings were ever made. We presume this may have occurred on December 19, 2008, when DCFS determined the complaint was "substantiated," or on January 12, 2009, when Sherrard issued his supervisory review decision, but even so, Mann does not allege that the Defendants were immediately *required* to close the Center or revoke Mann's license at any point. That is because 89 ILL. ADMIN. CODE § 383.50 allows the state to offer a corrective plan to the individual (which Mann agreed to) instead of pursuing the most drastic means available.

In fact, Mann may have actually *benefitted* from the procedures she was afforded during the entire process. The protective plan, the additional reviews, the corrective plan, and the expungement appeal were all in place to prevent the closure of the Center or the revocation of her license, which she now claims should have occurred. Mann's contention is circular: DCFS should have done more before preventing her from operating the Center, yet it should have permanently prevented her from operating the Center before providing her with opportunities to avoid that result. In short, we believe the procedures in place were sufficient to provide Mann an opportunity to be heard and prevent an erroneous deprivation of a protected

liberty interest. *See Dupuy I*, 397 F.3d at 504 ("Due Process . . . 'is flexible and calls for such procedural protections as the particular situation demands.' " (quoting *Hudson v. City of Chi.*, 374 F.3d 554, 559 (7th Cir. 2004)).

We move to the sufficiency of Mann's claim that the Defendants failed to timely complete its investigation of the complaint against her. This allegation invokes 89 ILL. ADMIN. CODE § 383.35, which states that an investigation shall be completed within thirty days upon receipt of a complaint. The investigation in this case took almost 120 days—though it was initially extended an additional thirty days in accordance with § 383.35(b). The Defendants concede that the investigation was not completed within the time frame prescribed, but a violation of state procedures does not automatically equate to a violation of Mann's due process rights. *See Anult v. Speicher*, 634 F.3d 942, 947 (7th Cir. 2011) ("[E]ven if Plaintiff could show Defendant violated Illinois law, failure to comply with state procedures does not demonstrate the violation of Plaintiff's clearly established constitutional due process rights."). We must make an independent determination as to whether this delay could be a violation of due process. *Boyd v. Owen*, 481 F.3d 520, 524 (7th Cir. 2007) (citing *Cleveland Bd. of Educ. v. Loudermill*, 470 U.S. 532, 541 (1985)).

In this case, which deals with allegations of child abuse and neglect, we do not believe that the sixty-day delay can support a due process violation finding. All parties benefit from a thorough review of a child abuse complaint. DCFS has a duty to ensure that

children will not be subjected to abuse or neglect when they are in the care of a day care provider, and day care providers should not have a "substantiated" or "indicated" finding entered against them without a proper investigation and review. *See Dupuy I*, 397 F.3d at 507-09 (affirming the district court's injunction requiring DCFS to provide child care workers with an opportunity to respond to allegations before a report is indicated and disclosed because the injunction's requirements adequately balanced the competing interests of the state and the workers). An additional sixty days to make these determinations and balance the countervailing concerns is not an unreasonable amount of time.

Moreover, despite the delay, the facts as pleaded demonstrate that Mann was given an opportunity to be heard at the January 6, 2009 supervisory review, which was completed within the time frame required. *See* 89 ILL. ADMIN. CODE § 383.45(c). Mann was also granted an informal review of the supervisory review, and she was given an opportunity to have the indicated report expunged. *See* § 336.80. This information supports a conclusion that Mann was afforded all the process "due" and that the Defendants' intrusion on Mann's right to operate the Center was no greater than was necessary to address the complaint against her. *See Dupuy I*, 397 F.3d at 504 ("As long as substantial post-deprivation process is available, the pre-deprivation process required . . . need not be elaborate or extensive. Rather, in many situations, it 'should be an initial check against mistaken decisions[.]' " (quoting *Hudson*, 374 F.3d at 560)). Mann's allegation regarding the delay is insufficient to support a due process violation.

That leaves Mann's allegation that the Defendants improperly and indefinitely closed the Center based on a meritless allegation. But even when viewed in the light most favorable to Mann, the facts alleged demonstrate that a child was hit in the face and injured by another child when the only two licensed day care providers at the Center were out of the room. As we have stated, Mann acknowledges that these events occurred and that they formed the basis of the complaint to DCFS. The complaint was not without merit. *Cf. Hernandez*, 657 F.3d at 481-82 (stating that the DCFS investigator did not have a reasonable suspicion that the child "had been abused or was in imminent danger of abuse").

Insofar as Mann claims that the complaint was meritless because the indicated finding was later expunged, that does not mean DCFS cannot act diligently to prevent the possibility of future harm or neglect when it receives a credible complaint. *See Siliven*, 635 F.3d at 929 (explaining that the state has a "strong interest in protecting children from abuse" and must take reasonable action in light of the particular facts known to it). The standard required for certain actions throughout the pendency of an investigation is different, and the allegation was not meritless when DCFS initiated its investigation of Mann and began a formal investigation into the complaint. *See* 89 ILL. ADMIN. CODE § 300.100 (DCFS must have "reasonable cause" to begin an initial investigation when it receives a complaint and a "good faith indication that child abuse or neglect exists" to commence a formal investigation). We agree with the district court that Mann's allegation that

the Center was closed as a result of a meritless complaint cannot survive the Defendants' motion to dismiss.

As a final matter, Mann attempts to shoehorn the allegations in her Amended Complaint into an argument that the Defendants erroneously applied the "credible evidence" standard. She states that "DCFS officials failed in this case to take into account all available evidence." Mann also contends in her brief that the Defendants failed to provide her with a timely appeal hearing. Neither of these contentions was alleged in Mann's Amended Complaint, let alone presented to the district court, so they are waived. *See Pole v. Randolph*, 570 F.3d 922, 937-38 (7th Cir. 2009) (stating that issues may not be raised on appeal if they were not adequately before the district court). The district court provided Mann with an opportunity to amend her complaint; that time has since passed.

We need not address the Defendants' qualified immunity defense because Mann has not adequately pleaded a cause of action for deprivation of a constitutional right.

## III. CONCLUSION

We AFFIRM the dismissal of Mann's Amended Complaint.