In the

# United States Court of Appeals

## For the Seventh Circuit

No. 13-2877

KEVIN O'GORMAN,

*Plaintiff-Appellant,*

*v.*

CITY OF CHICAGO,

*Defendant-Appellee.*

Appeal from the United States District Court for the
Northern District of Illinois, Eastern Division.
No. 1:11-cv-02439— **Robert M. Dow, Jr.**, *Judge.*

ARGUED SEPTEMBER 9, 2014 — DECIDED JANUARY 26, 2015

Before FLAUM, ROVNER, and HAMILTON, *Circuit Judges.*

ROVNER, *Circuit Judge.*  Kevin O'Gorman filed suit under 42
U.S.C. § 1983 against the City of Chicago, alleging that the City
violated his Fourteenth Amendment right to due process and
equal protection in its actions surrounding his employment
with the City. The district court granted the motion to dismiss
O'Gorman's amended complaint, and O'Gorman appeals that
dismissal.

As is appropriate in the context of a motion to dismiss, we take as true the facts as set forth in the complaint along with all reasonable inferences. *Thulin v. Shopko Stores Operating Co., LLC,* 771 F.3d 994, 995 (7th Cir. 2014). O'Gorman worked for the City of Chicago's Department of General Services from 1996 until 2007, first as a carpenter and later as a General Foreman of the General Trades. In the latter capacity, he regularly placed orders for the City with Arrow Lumber Company ("Arrow"), which was owned and operated by Donald Beal. In November 2004, the Inspector General's Office of the City began an investigation upon receiving reports from an Arrow employee that the company treated orders placed by O'Gorman differently than other orders. The complaint alleges that the investigation improperly focused on O'Gorman and protected Arrow and Beal for political reasons. We will not set forth those allegations in detail as they are ultimately irrelevant to the analysis of the issues before us, but the complaint includes allegations that Beal shredded some documents and forged other documents to cover up Arrow's fraud.

On May 7, 2007, O'Gorman was arrested and charged with theft of City property. He was placed on paid administrative leave, and on May 10 the City issued a press release announcing the charges against O'Gorman, including that he had diverted "more than $50,000 in goods from a city lumber contractor for his own use from early 2003 to 2005, and then filed false paperwork in an attempt to cover up the theft." The information was subsequently published in the Chicago Tribune, and a link to that Tribune article was placed on the Inspector General's website. That announcement remained on the website from that date to the present.

During the summer of 2007, O'Gorman was charged by the City with violations of eleven City Personnel Rules based on the same conduct, and including alleged false statements and alleged theft and diversion of property paid for with City funds. According to the complaint, Fran Bailey, the City's Human Resources Director, informed O'Gorman's union representative that if O'Gorman did not resign he would be fired and that a hearing on the charges would be a "sham." O'Gorman also alleged that Frank Scalise, Deputy Commissioner, and Ron Huberman, then-Chief of Staff to the Mayor and O'Gorman's immediate supervisor, told him that if he resigned, he would be reinstated once he was acquitted of the criminal charges. O'Gorman opted to resign on August 24, 2007.

Beal was also criminally charged, and pled guilty to defrauding the City. O'Gorman was ultimately acquitted of all criminal charges on January 19, 2010. He immediately requested reinstatement to his City job. According to his complaint, his attorney met with City Commissioner Judy Martinez and gave her an affidavit from Scalise stating that Scalise told O'Gorman he would be reinstated. Martinez affirmed that his application would be reviewed in light of that information and his acquittal, but he was not reinstated to his position.

O'Gorman alleges that the City refused to reinstate him because he was placed on a "Do-Not-Hire List." The existence of the list was first made public in 2009, although the list itself was not released to the public at that time. The list consisted of names of individuals all of whom had either been terminated from City positions or had resigned in the face of allegations of wrongdoing. Individuals on the list were barred from City

employment, and there was no process in place by which a person could seek removal of his name from the list. It contained over 4,500 names at one point, but in early 2011, the Inspector General's Office and the Shakman hiring monitor worked with the Mayor's office to overhaul the list. The Mayor retained sole discretion as to whether an individual was placed on the list. A Chicago Tribune article in February 2011 revealed that the list had been revised to include 218 names. Pursuant to a Freedom of Information Act request, the Better Government Association (BGA) obtained a copy of the list, and published the names, including O'Gorman's name.

The list published by the BGA merely sets forth a list of persons who are ineligible for rehire for a defined period of time, and a list of persons ineligible for an indefinite period of time. O'Gorman is on the latter list, and the only information included as to him is his department name and that he resigned in lieu of discharge. The list also set forth the criteria for deeming an employee ineligible for rehire indefinitely. It provided that a former employee was ineligible for rehire if his or her termination resulted from a discharge or from a resignation in lieu of discharge in which the employee resigns after having been served with charges. If the charges alleged criminal activity or certain actions of moral turpitude, the person was deemed ineligible for rehire indefinitely.

The City also pursued a civil case against O'Gorman under the Illinois Whistleblower Act and the Chicago False Claims Act. That case was stayed during the pendency of the criminal proceeding, but reopened upon its termination and was pending at the time of argument in this case.

We review a dismissal under Fed. R. Civ. P. 12(b)(6) *de novo.* *Ball v. City of Indianapolis*, 760 F.3d 636, 642 -43 (7th Cir. 2014). A complaint need not contain detailed factual allegations, but must contain sufficient factual matter, accepted as true, to state a claim for relief that is facially plausible. *Bell Atlantic Corp. v. Twombly*, 550 U.S. 544, 570 (2007); *Ashcroft v. Iqbal*, 556 U.S. 662, 678 (2009); *Mann v. Vogel*, 707 F.3d 872, 877 (7th Cir. 2013). The allegations must be sufficient to raise a right to relief above the speculative level. *Twombly*, 550 U.S. at 555. A complainant can plead himself out of court by including factual allegations that establish that the plaintiff is not entitled to relief as a matter of law. *Hollander v. Brown*, 457 F.3d 688, 691 n.1 (7th Cir. 2006). Thus, although a plaintiff need not anticipate or overcome affirmative defenses such as those based on the statute of limitations, if a plaintiff alleges facts sufficient to establish a statute of limitations defense, the district court may dismiss the complaint on that ground. *Cancer Fndtn, Inc. v. Carberus Capital Management, LP*, 559 F.3d 671, 674-75 (7th Cir. 2009).

O'Gorman asserts on appeal that the district court erred in dismissing the amended complaint because he adequately alleged violations of due process and equal protection that are actionable under 42 U.S.C. § 1983. Specifically, in his amended complaint he alleged that the City deprived him of his property and liberty interests in employment without due process, and that he was selectively prosecuted and treated less favorably than similarly situated job applicants when he sought reinstatement in 2010 in violation of the equal protection clause. We will consider these claims in turn.

With respect to the due process claims based on a property interest, the district court identified five allegedly separate claims raised by O'Gorman: (1) his loss of City employment in July 2007 without due process; (2) his loss of all future City employment without due process when O'Gorman was placed on the "Do-Not-Hire List" in July 2007; (3) his "second loss" of future City employment without due process around 2010 or 2011 when the list was revised but continued to include his name; (4) his loss of employment as a teacher with the City Colleges in August 2008 without due process; and (5) the City's failure to rehire him without due process in early 2010 after he was acquitted of criminal charges. On appeal, he makes no argument related to his employment as a teacher with the City Colleges, and therefore we need not address that claim at all.

As to O'Gorman's challenge to the "forced" resignation in 2007, the district court held that the claim should be dismissed based on the statute of limitations. The limitations period for § 1983 claims is based in state law, and the statute of limitations for § 1983 actions in Illinois is two years. *Moore v. Burge*, 771 F.3d 444, 446 (7th Cir. 2014); *Wallace v. Kato*, 549 U.S. 384, 387 (2007). Therefore O'Gorman's due process claims had to be brought within two years. The date at which the claim accrues and thus starts the running of the limitations period is a matter of federal law, and generally occurs when a plaintiff knows the fact and the cause of an injury. *Moore*, 771 F.3d at 447; *Wallace*, 549 U.S. at 388. The amended complaint alleged that at the time of his resignation in 2007, O'Gorman had been informed that he would receive only a sham hearing and that the decision to terminate him was preordained. Therefore, the district court held that, by his own allegations, O'Gorman should have

known in 2007 that his constitutional rights to due process were being violated, and that he had two years to pursue a claim based on that deprivation.

O'Gorman raised two arguments in the district court to rebut that conclusion. First, he contended that under an Illinois savings provision applicable to counter-claims, he had until 2013 to file his claim; second, he maintained that the discovery rule should apply to his claims based on his 2007 resignation because he did not discover the nature of his injuries until 2011. The district court rejected both of those arguments.

On appeal, O'Gorman has abandoned those arguments. Instead, he now argues that the statute of limitations is inapplicable because the 2007 violation was part of a continuing violation or that it was part of an eight-year long conspiracy and that the statute of limitations does not begin to run until the last of the actions occurred. Those arguments, which are in any case meritless, *see e.g. Moore*, 771 F.3d at 447 ("[e]ach discrete act—something wrongful independent of other events—carries its own period of limitations"), were not presented to the district court. We have repeatedly held that a party opposing a motion in the district court must inform the court of the factual and legal reasons why the motion should not be entered, and if it fails to do so it cannot then raise those arguments on appeal. *United States v. Ritz*, 721 F.3d 825, 827-28 (7th Cir. 2013); *Frey Corp. v. City of Peoria*, 735 F.3d 505, 509 (7th Cir. 2013)(where defendant changed its theory after losing below, the argument not raised in the district court is waived on appeal). Accordingly, the district court properly dismissed the due process challenge to the 2007 "forced" resignation as untimely.

We are left, then, with his due process challenges to the failure to reinstate him to his position after acquittal, and failure to rehire him for a City position in 2010 and 2011 based on his presence on the Do-Not-Hire List. The district court held that he had failed to demonstrate a property interest in future employment by the City, and that dismissal was proper. In order to proceed on his claim that he was deprived of a property interest, O'Gorman had to allege the existence of a constitutionally-protected interest. *Moss v. Martin*, 473 F.3d 694, 700 (7th Cir. 2007). Property interests are not created by the Constitution, but rather are created and defined by existing rules or understandings that stem from an independent source such as state law. *Akande v. Grounds*, 555 F.3d 586, 590 (7th Cir. 2009); *Chicago Teachers Union, Local No. 1, Am. Federation of Teachers v. Bd. of Educ. of the City of Chicago*, 662 F.3d 761, 763 (7th Cir. 2011). "Accordingly, federal property interests under the 14th Amendment usually arise from rights created by state statutes, state or municipal regulations or ordinances, and contracts with public entities." *Ulichny v. Merton Community School Dist.*, 249 F.3d 686, 700 (7th Cir. 2001). O'Gorman points to no state law, ordinance or contract that would entitle him to reinstatement in his position after resigning, or after being terminated and subsequently cleared of criminal charges. In fact, O'Gorman relies on the Collective Bargaining Agreement (CBA) in his argument that he could only be terminated for just cause, but does not dispute that the same CBA, which was adopted by the City Council as an ordinance, provides that "[n]otwithstanding the provisions of any ordinance or rule to the contrary ... the employee shall have no right to be rehired, if the employee quits, [or] is discharged ..." That affirmatively

indicates that there is no property interest in being rehired. O'Gorman has failed to identify any source of state law or rules that would establish a property interest here. O'Gorman points instead to the representations by Scalise and Huberman that he would be reinstated once he was acquitted in the criminal trial. Those statements cannot form the basis for a suit against the City because there is no plausible allegation that Scalise or Huberman were policy-makers for the City in a position to bind the City or enter into a contract, particularly given the clear language of the CBA on the matter. O'Gorman also claims that the CBA establishes a property interest in providing that he can only be terminated for just cause, but as previously noted, the challenge to the original resignation (or constructive discharge as he characterizes it) is barred by the statute of limitations.

O'Gorman also pursues procedural due process challenges premised on a liberty interest rather than a property interest. In order to proceed on such a claim, O'Gorman must sufficiently allege that he has a cognizable liberty interest under the Fourteenth Amendment, that he was deprived of that liberty interest, and that the deprivation was without due process. *Mann*, 707 F.3d at 877. It is well-established that an individual does not have any cognizable liberty interest in his reputation, and therefore "'mere defamation by the government does not deprive a person of liberty protected by the Fourteenth Amendment, even when it causes serious impairment of one's future employment.'" *Id.* at 878 quoting *Dupuy v. Samuels*, 397 F.3d 493, 503 (7th Cir. 2005); *Hojnacki v, Klein-Acosta*, 285 F.3d 544, 548 (7th Cir. 2002); *Siegert v. Gulley*, 500 U.S. 226, 233-34 (1991). Only when paired with the alteration of legal

status, such as a right previously held, will such defamation implicate due process rights. *Mann*, 707 F.3d at 878. If the state actor casts doubt on the individual's reputation or character in such a manner that it becomes virtually impossible for that person to find employment in his chosen field, then the government has infringed upon that individual's liberty interest to pursue the occupation of his choice. *Id.*

O'Gorman presents only a cursory argument in his opening brief on appeal that the City deprived him of a liberty interest without process, devoting only four conclusory sentences to identifying the actions that impaired his liberty interest and the impact on his ability to pursue his occupation. He asserts that "repeated publications by various City agents … significantly impinge[d] his ability to pursue any occupation at all." The "publications" that he identifies include that in 2007 the Inspector General's office posted and left displayed for over five years on its website the information that O'Gorman had been arrested for theft, that the City's Law Department reinstated civil charges of theft, and that the Inspector General's office in 2011 issued a press release stating that O'Gorman was permanently banned from City employment based on his resignation in lieu of discharge when facing such charges (which apparently refers to the BGA's press release regarding the do-not-hire list which O'Gorman attributes to the City).

There are numerous potential problems with this challenge, including that he presents no allegations that the process provided in the Law Department's civil lawsuit itself is constitutionally deficient, and that the City refused to publish the do-not-hire list in 2009 and released it in 2011 only in

response to a FOIA request, at which time it was publicly released by the BGA not the City. We need not consider whether compliance with a FOIA request could constitute actionable dissemination of that information to the public, though, because the liberty interest claim fails for the more fundamental reason that it was not timely filed. For all of those allegations, the alleged stigma to his reputation stemmed from the charges of theft, but as O'Gorman himself recognizes those allegations were first publicly disclosed by the City in 2007 when the Inspector General's office posted it on its website where it remained for five years. O'Gorman failed to pursue a due process challenge based upon the public disclosure of that information within the two year limitations period, and therefore is barred from asserting it at this time. *Moore*, 771 F.3d 444, 446 (statute of limitations for § 1983 actions in Illinois is two years).

Finally, his remaining claims are similarly without merit. He alleges that he was denied equal protection based on theories of selective prosecution and a class-of-one theory that he was treated differently than other employees or prospective employees not based on his membership in a protected class. The selective prosecution claim was not developed on appeal and is waived. *See Zuppardi v. Wal-mart Stores, Inc.*, 770 F.3d 644, 648 (7th Cir. 2014). As for his class-of-one theory, the Supreme Court has held that class-of-one claims are inapplicable to situations of public employment such as the one presented here, and he has presented no reasoned basis to distinguish that authority. *See Engquist v. Oregon Dept. of Agr.*, 553 U.S. 591, 598 (2008). He also raises a claim of malicious prosecution but that claim was never presented in the district

court or in the complaint itself, and therefore is not before us. *Ritz*, 721 F.3d at 827-28; *Frey Corp.*, 735 F.3d at 509.

The decision of the district court is AFFIRMED.