In the

# United States Court of Appeals

## For the Seventh Circuit

No. 16-2857

RONALD FORGUE,

*Plaintiff-Appellant,*

*v.*

CITY OF CHICAGO, *et al.*,

*Defendants-Appellees.*

Appeal from the United States District Court for the
Northern District of Illinois, Eastern Division.
No. 15-cv-08385 — **Charles R. Norgle**, *Judge.*

ARGUED SEPTEMBER 27, 2017 — DECIDED OCTOBER 17, 2017

Before WOOD, *Chief Judge*, and FLAUM and KANNE, *Circuit Judges*.

FLAUM, *Circuit Judge*. From 1986 to 2015, Plaintiff Ronald Forgue was an officer with the Chicago Police Department ("CPD"). Forgue alleges that, from 2012 to 2015, he was harassed by fellow police officers for adhering to CPD policy and procedure and for filing numerous internal complaints. Forgue filed suit against the City of Chicago and over forty

individual officers under 42 U.S.C. § 1983 for First Amendment retaliation, equal protection, civil conspiracy, and procedural due process, as well as related state law claims. The district court granted defendants' Rule 12(b)(6) motion to dismiss Forgue's federal claims and declined to exercise supplemental jurisdiction over his state law claims. We affirm in part and reverse in part.

## I. Background

From 1986 to 2015, Ronald Forgue worked for the CPD in several capacities, including for the Internal Affairs Division ("IAD"), as an incident team Sergeant, as an Operations Lieutenant, and as a Commanding Officer in the Alternate Response Unit. Forgue officially retired on August 13, 2015 after nearly thirty years of service.

Forgue alleges that, between 2012 and 2015, he was harassed "in retaliation against his leadership as a sergeant and lieutenant because he followed proper procedure." Forgue cites several specific instances where he was wrongfully targeted for adhering to CPD rules. In 2012, for example, Forgue complained to his superiors that white officers were "spitting tobacco in black families' homes when on calls." Forgue claims that, in response, his superiors laughed at him and told him to "not mess with his boys."

Forgue also maintains that CPD harassed him by unlawfully targeting his sons. Between June 2012 and January 2015, Forgue's three sons were stopped, arrested, handcuffed, or detained a total of twenty-two times. According to Forgue, the "majority of the reasons given for the stops and/or arrests were false." As examples: Forgue's three sons were falsely la-

beled as gang members; in November 2012, two officers unlawfully seized one of Forgue's sons, drove him around, and interrogated him for two hours; and in August 2014, an officer "grabbed [Forgue's son] by the neck and beat[] [him] in front of [his] house." In response to this treatment, Forgue filed complaints with his superiors.

Forgue also was allegedly targeted directly. On November 20, 2013, a poster falsely labeling Forgue's picture with the words "sex offender" was displayed and distributed at Forgue's police station. On March 24, 2014—the same day that he reported to the IAD that a sergeant was improperly distributing a booking photo and rap sheet of his son—Forgue discovered a fake Facebook account created under his name. The Facebook page associated with the account displayed a photograph of Forgue labeled "IAD INFORMANT." The creator of the account (who falsely purported to be Forgue himself) posted disparaging comments about Forgue as well as false complaints on the official Facebook page for the Chicago Mayor's Office.

Moreover, Forgue claims he was passed over for several promotions in favor of other officers who did not file complaints, and on September 23, 2014, Forgue was assigned to the less desirable Alternate Response Unit. According to Forgue, the police union told him this transfer was because "of the complaints he made to the [IPRA] and IAD." Overall, between May 2012 and September 2014, CPD officers filed seven formal complaints against Forgue, allegedly for his strict compliance with CPD policies.

Finally, upon his retirement from the CPD in 2015, Forgue was denied a retirement identification card ("Retirement

Card" or "Card"). Pursuant to CPD policy, an officer who provides at least ten years of service and leaves the CPD in "good standing" receives a Retirement Card. Although the good standing determination is left to the discretion of the Police Superintendent, Forgue's complaint alleges that it was the "policy and practice" of the CPD to issue a Card to all retiring officers. There are several detriments to not receiving a Card. Without one, Forgue cannot carry a concealed firearm, procure benefits such as health insurance, or find other employment in law enforcement.

On September 23, 2015, Forgue filed a complaint against the City of Chicago and forty-two City employees, including the CPD Superintendent and CPD sergeants, lieutenants, and officers. Forgue brought 42 U.S.C. § 1983 claims for First Amendment retaliation, equal protection, civil conspiracy, and procedural due process, as well as several related state law claims. In response, defendants filed a motion to dismiss pursuant to Federal Rule of Civil Procedure 12(b)(6). The district court granted defendants' motion on Forgue's federal claims and declined supplemental jurisdiction over the remaining state law claims. This appeal followed.

## II. Discussion

We review a district court's grant of a Rule 12(b)(6) motion to dismiss de novo. *Kubiak v. City of Chicago*, 810 F.3d 476, 480 (7th Cir. 2016). To survive a motion to dismiss, a plaintiff must allege "enough facts to state a claim to relief that is plausible on its face." *Bell Atl. Corp. v. Twombly*, 550 U.S. 544, 570 (2007). "A claim has facial plausibility when the plaintiff pleads factual content that allows the court to draw the reasonable inference that the defendant is liable for the misconduct al-

leged." *Ashcroft v. Iqbal*, 556 U.S. 662, 678 (2009). "The plausibility standard is not akin to a 'probability requirement,' but it asks for more than a sheer possibility that a defendant has acted unlawfully." *Id.* (quoting *Twombly*, 550 U.S. at 556). In reviewing a 12(b)(6) motion, "[w]e accept as true all of the well-pleaded facts in the complaint and draw all reasonable inferences in favor of the plaintiff." *Kubiak*, 810 F.3d at 480–81.

### A. First Amendment Retaliation Claim

"To establish a claim for retaliation in violation of the First Amendment, a public employee first must prove that [his] speech is constitutionally protected." *Id.* at 481. A public employee's speech is constitutionally protected only if it: (1) was made as a private citizen; and (2) addressed a matter of public concern. *Id.* If the employee fails to establish either of these elements, "the employee has no First Amendment cause of action based on his or her employer's reaction to the speech." *Garcetti v. Ceballos*, 547 U.S. 410, 418 (2006). "The determination of whether speech is constitutionally protected is a question of law." *Kubiak*, 810 F.3d at 481.

Here, the district court held that Forgue spoke as a public employee, not a private citizen, in filing his internal complaints of police misconduct. We agree. "[W]hen public employees make statements pursuant to their official duties, the employees are not speaking as citizens for First Amendment purposes, and the Constitution does not insulate their communications from employer discipline." *Garcetti*, 547 U.S. at 421. "Determining the official duties of a public employee requires a practical inquiry into what duties the employee is expected to perform, and is not limited to the formal job description." *Kubiak*, 810 F.3d at 481 (quoting *Houskins v. Sheahan*, 549 F.3d 480, 490 (7th Cir. 2008)).

Forgue contends that his complaints with the IAD and IPRA about the CPD's treatment of his sons are entitled to First Amendment protection because they were made "as a concerned citizen and father outside of his employment duties." He stresses that anyone mistreated by the police is free to file complaints with the IAD. Forgue's argument is unpersuasive. We have held on several occasions that "a police officer's duty to report official police misconduct is a basic part of the job." *See Roake v. Forest Pres. Dist. of Cook Cty.*, 849 F.3d 342, 346 (7th Cir. 2017) (holding that a police officer spoke as a public employee when he shared complaints "only with his employer, and the complaints focused exclusively on official misconduct by his fellow officers"); *Kubiak*, 810 F.3d at 481–82 (holding that a police officer's internal complaints alleging that a co-worker inappropriately yelled at her about a work-related report were "made as a public employee and not as a private citizen"); *Vose v. Kliment*, 506 F.3d 565, 571 (7th Cir. 2007) (holding that a police officer "was merely doing his job" when he reported suspected police misconduct to his superiors). Indeed, this conclusion makes sense because at bottom, a police officer is "responsible for protecting the public from harm." *Kubiak*, 810 F.3d at 482.

Forgue argues his speech is distinct from cases like *Kubiak*. First, he notes that his sons were detained or arrested "away from the office." In the context of police activity, however, this fact is immaterial; officers perform the majority of their work patrolling the streets.

Second, Forgue argues that his speech concerned the safety of his sons rather than the terms of his police duties. The relevant inquiry, however, is whether the speech is made *pursuant* to, not *about*, public employment. Like in *Kubiak*,

Forgue's grievances were "intimately connected" with his job. *See id*. Indeed, Forgue's complaint specifically alleges that the CPD's retaliatory behavior was "due to [his] complaints to IAD and due to [his] reputation as an officer who follows [CPD] rules and regulations." Forgue's attempts to distinguish *Kubiak* are thus unavailing.

Moreover, as the district court stressed, Forgue's speech was required by CPD General Order G08-01-02, which mandates police officers "to notify their superiors when they observe instances of police misconduct." *Forgue v. City of Chicago*, No. 15-cv-08385, slip op. at *3 (N.D. Ill. June 15, 2016); *see* Chicago Police Department General Order G08-01-02, http://directives.chicagopolice.org/directives/data/a7a57be2-12ce5918-9f612-ce69-05188cb6d4da6c72.html (last visited Oct. 17, 2017) ("Members who have knowledge of circumstances relating to misconduct will submit an individual written report to a supervisor … ."). Additionally, the Rules of Conduct, adopted by the CPD Police Board, state that police officers must "report to the Department any violation of Rules and Regulations or any other improper conduct which is contrary to the policy, orders or directives of the Department." Chicago Police Department Rules and Regulations, Article V. Rules of Conduct, Rule 22, https://www.cityofchicago.org/dam/city/depts/cpb/PoliceDiscipline/RulesofConduct.pdf (last visited Oct. 17, 2017). Thus, "part of Plaintiff's job requirements was to make the very complaints for which Plaintiff alleges that he was retaliated against." *Forgue*, No. 15–cv–08385, at *3–4.[1] As a result, it is clear that Forgue's complaints were made pursuant to his job responsibilities. The

---

[1] Forgue argues that general orders should not be relied upon in determining an officer's job requirements for First Amendment purposes. We

district court, therefore, correctly concluded that Forgue spoke as a public employee, not a private citizen. Thus, Forgue's speech is not entitled to First Amendment protection.

## B. Equal Protection Class-of-One Claim

To state an equal protection claim on a class-of-one theory, a plaintiff must allege that he has been "intentionally treated differently from others similarly situated and that there is no rational basis for the difference in treatment." *Engquist v. Or. Dep't of Agric.*, 553 U.S. 591, 601–02 (2008) (quoting *Village of Willowbrook v. Olech*, 528 U.S. 562, 564 (2000)). Forgue asserts that defendants violated his equal protection rights by filing false complaints, discriminating against him in the conditions of his employment (specifically, by denying him a Retirement Card), and targeting his sons for no reason other than to harass him. This theory fails. As the district court held, Forgue's theory of liability is categorically foreclosed by the Supreme Court's holding in *Engquist.*

In *Engquist*, the Court explicitly held that "a 'class-of-one' theory of equal protection has no place in the public employment context." *Id.* at 594. In making this decision, the Court considered the "traditional view of the core concern of the

---

have relied upon general orders on multiple occasions, however, to determine that a public employee was not speaking as a private citizen. *See, e.g., Houskins*, 549 F.3d at 491 ("[The public employee] was clearly expected to report the incident under the General Orders [of the Cook County Department of Corrections], and therefore she was speaking as part of her job as an employee of the Sheriff, and not as a citizen."); *Swearnigen-El v. Cook Cty. Sheriff's Dept.*, 602 F.3d 852, 862 (7th Cir. 2010) (determining that a correctional officer's complaints to his supervisors "were made pursuant to his duties" because a general order created a duty to report).

Equal Protection clause as a shield against arbitrary classifications." *Id.* at 598. It stressed that, in acting as an employer, the government's actions "by their nature involve discretionary decisionmaking based on a vast array of subjective, individualized assessments." *Id.* at 603. Thus, "[t]o treat employees differently is not to classify them in a way that raises equal protection concerns, [but] [r]ather, it is simply to exercise the broad discretion that typically characterizes the employer-employee relationship." *Id.* at 605. To allow a class-of-one challenge in these circumstances "would undermine the very discretion that such state officials are entrusted to exercise." *Id.* at 603.

Forgue argues that *Engquist* does not apply because "[t]here was no rational reason" for officers to make meritless stops, detentions, and arrests of his sons. Like Forgue, however, the plaintiff in *Engquist* similarly argued that she was fired for "arbitrary, vindictive, and malicious reasons." *Id.* at 595. In rejecting this claim, the Court did not conclude that the defendants acted reasonably; it instead created a *per se* rule that public employees may not bring class-of-one claims against their public employers.

Forgue further contends that *Engquist* does not bar his claim because the complaint is directed not just at the City, but also *individual* defendant officers. This argument fails. In *Engquist*, the plaintiff sued not only the Department of Agriculture, but also individual employees. *Id.* at 594. By extension, our cases applying *Engquist* have interpreted it to bar class-of-one claims about "disputes related to a public employee's interactions with superiors *or co-workers*." *Avila v. Pappas*, 591 F.3d 552, 554 (7th Cir. 2010) (emphasis added); *see also Gross v. Town of Cicero, Ill.*, 619 F.3d 697, 701, 703 (7th Cir.

2010) (barring a town employee's class-of-one claim against the town *and* individual town officials).

Finally, Forgue maintains that *Engquist* does not apply because the actions of the defendant police officers "fall[] outside [the] individualized and subjective determinations inherent in the public employment context" that were the basis of the *Engquist* decision. Determinations as to the conditions of Forgue's employment, however—including whether to issue him a Retirement Card—are precisely the kind of discretionary decisions that, under *Engquist*, cannot underlie a class-of-one claim. Moreover, even Forgue's allegations that CPD officers targeted his sons ultimately stem from actions Forgue took *at work* pursuant to his official police duties (filing complaints against fellow officers and strictly following CPD rules and procedure).[2]

In short, and as we have previously made clear, *Engquist* held that "disputes related to a public employee's interactions with superiors or co-workers *never* may be litigated as class-of-one claims under the equal protection clause." *Avila*, 591 F.3d at 554; *see also O'Gorman v. City of Chicago*, 777 F.3d 885, 892 (7th Cir. 2015) ("[T]he Supreme Court has held that class-of-one claims are inapplicable to situations of public employment … ."); *Del Marcelle v. Brown Cnty. Corp.*, 680 F.3d 887, 895 (7th Cir. 2012) (en banc) (opinion of Posner, J.) ("The specific question in *Engquist* was whether public employees should be

---

[2] Forgue cites to several cases to support his contention that *Engquist* does not apply. *See, e.g., Geinosky v. City of Chicago*, 675 F.3d 743 (7th Cir. 2012); *Ivy v. Powers*, No 08-cv-3826, 2009 WL 230542 (N.D. Ill. Jan. 30, 2009); *Craft v. Flagg*, No. 06-cv-1451, 2008 WL 1883337 (N.D. Ill. Apr. 24, 2008). These cases are not helpful because each involved a *private* individual suing a public entity, not a public employee suing his employer.

allowed to bring class-of-one suits against their employers; the Court held they could not."). Thus, the district court correctly determined that *Engquist* precludes Forgue's equal protection class-of-one claim.

### C. Procedural Due Process Claim

The Due Process Clause of the Fourteenth Amendment prohibits states from "depriv[ing] any person of life, liberty, or property, without due process of law." U.S. Const. amend. XIV, § 1. "To state a claim for a procedural due process violation, a plaintiff must demonstrate (1) a cognizable property interest; (2) a deprivation of that property interest; and (3) a denial of due process." *Manistee Apts., LLC v. City of Chicago*, 844 F.3d 630, 633 (7th Cir. 2016). The district court dismissed Forgue's due process claim on the ground that Forgue failed to plead plausible facts suggesting that he possessed a cognizable property interest in receiving a Retirement Card. We disagree.

"Property interests are not created by the Constitution, 'they are created and their dimensions are defined by existing rules or understandings that stem from an independent source such as state law.'" *Cleveland Bd. of Educ. v. Loudermill*, 470 U.S. 532, 538 (1985) (quoting *Board of Regents v. Roth*, 408 U.S. 564, 577 (1972)). Therefore, property interests can be created by "contracts with public entities." *O'Gorman*, 777 F.3d at 890 (quoting *Ulichny v. Merton Cmty. Sch. Dist.*, 249 F.3d 686, 700 (7th Cir. 2001)). Such interests "are not limited by a few rigid, technical forms." *Perry v. Sindermann*, 408 U.S. 593, 601 (1972). Instead, "'property' denotes a broad range of interests that are secured by 'existing rules or understandings.'" *Id.* (quoting *Roth*, 408 U.S. at 577). Indeed, "[a] person's interest in a benefit is a 'property' interest for due process purposes if

there are such rules or mutually explicit understandings that support his claim of *entitlement* to the benefit and that he may invoke at a hearing." *Id.* (emphasis added).

To be sure, an individual must have more than "an abstract need or desire" or "unilateral expectation" to possess a cognizable entitlement. *Roth*, 408 U.S. at 577. Crucially, however, an entitlement need not be codified in writing; a "*de facto*" unwritten or implied policy is sufficient to create an entitlement and protectable property interest. *Sindermann*, 408 U.S. at 600–02 (holding, in the context of university employment, that "there may be an unwritten 'common law' in a particular university that certain employees shall have the equivalent of tenure"); *see also Hermes v. Hein*, 742 F.2d 350, 354–55 (7th Cir. 1984) ("A property interest in promotion need not arise out of a contract or statute, but may be based on a *de facto* promotional program."); *Vail v. Bd. of Educ. of Paris Union Sch. Dist. No. 95*, 706 F.2d 1435, 1437 (7th Cir. 1983) *aff'd by equally divided Court*, 466 U.S. 377 (1984). This sort of "common law" property interest can be established through unwritten "mutually explicit understandings" or "legitimate and reasonable reliance on a promise from the government." *Hannon v. Turnage*, 892 F.2d 653, 658 (7th Cir. 1990); *see also Vail*, 706 F.2d at 1440 ("Legitimate and reasonable reliance on a promise from the state can be the source of property rights protected under the Due Process Clause … .").

Forgue contends that he has a cognizable property interest in receiving a Retirement Card, and that his right to that benefit was deprived without due process. According to CPD policy, a retired employee receives a Card if he retires in good standing. It is undisputed that the determination as to whether an officer retires in good standing is at the discretion

of the CPD Superintendent. This does not mean, however, that such discretion can be arbitrary or totally unfettered. Indeed, Forgue alleges in his complaint that it was "the policy and practice" of the CPD and the Superintendent to issue Cards to police officers. Making all reasonable inferences in favor of Forgue—as we must when considering a 12(b)(6) motion to dismiss—Forgue pleads a plausible claim that the CPD has an unwritten, *de facto* custom to grant virtually all retiring employees a Card. Thus, Forgue sufficiently alleges that he has a legitimate entitlement and cognizable property interest in receiving a Retirement Card. We must therefore reverse the district court's decision to dismiss Forgue's procedural due process claim.

### D. Conspiracy Claim

Finally, Forgue claims that defendants entered into a conspiracy to violate his First Amendment and equal protection rights. Because Forgue failed to state a plausible claim of relief under these theories, the district court properly dismissed his conspiracy claim.[3]

### III. Conclusion

For the foregoing reasons, we AFFIRM in part and REVERSE and REMAND in part in accordance with this opinion.

---

[3] It cannot be fairly said that Forgue's conspiracy claim incorporates his procedural due process claim. For one, the conspiracy count makes explicit reference to the First Amendment and equal protection claims, but does not mention the procedural due process claim. Moreover, although the conspiracy count lists explicit acts taken in furtherance of the purported conspiracy, it makes no reference to Forgue's Retirement Card, the sole subject of his procedural due process claim.