In the

# United States Court of Appeals
## For the Seventh Circuit

_____

No. 06-1534

TONYA DAVIS,

*Plaintiff-Appellant*,

*v.*

COOK COUNTY and CYNTHIA PRZISLICKI,

*Defendants-Appellees.*

_____

Appeal from the United States District Court
for the Northern District of Illinois, Eastern Division.
No. 04 C 8218—**Robert W. Gettleman**, *Judge.*

_____

ARGUED SEPTEMBER 24, 2007—DECIDED JULY 16, 2008

_____

Before POSNER, FLAUM, and WOOD, *Circuit Judges.*

WOOD, *Circuit Judge.* Tonya Davis is a registered nurse assigned to the Emergency Room at John H. Stroger, Jr., Hospital of Cook County, Illinois ("Stroger"). Davis was involved in a series of unpleasant incidents with hospital personnel and expressed her resulting dismay in a memorandum. This prompted her supervisor, Cynthia Przislicki, to ask Davis to submit to an evaluation of fitness for duty. When Davis refused, Przislicki suspended her; she was ultimately reinstated with back pay.

Not satisfied with that measure, Davis filed suit against both Cook County (her employer) and Przislicki. Her complaint alleged (1) that the defendants discriminated against her on the basis of a perceived disability in violation of the Americans with Disabilities Act (ADA), 42 U.S.C. § 12101 *et seq.*; (2) that they violated her First Amendment rights and so are liable to her under 42 U.S.C. § 1983; and (3) that they defamed her in violation of Illinois law. The district court awarded summary judgment to the defendants on the two federal counts and declined to exercise supplemental jurisdiction over the state-law theory. Davis appeals only the grant of summary judgment on her First Amendment theory and the consequent dismissal of the state-law defamation count. We affirm the judgment of the district court.

# I

Within a six-month period (October 2003 to April 2004), Davis had a number of run-ins with various hospital employees, including a medical student, a doctor, and the nursing coordinator. In the last of those, Nursing Coordinator Clanton had instructed Davis to change a patient's bedsheet. Davis ignored the request, because she was in the middle of doing patient assessments, which she considered to be more important. (Later, a technician changed the sheets.) Davis complained to Przislicki that she felt harassed by Clanton. On April 5, 2004, Davis sent a memorandum entitled "Harassment" to the Employee Assistance Counselor, copying several hospital officials. In the memo, Davis alleged that she had been "harassed, abused, called out of [*sic*] my name and it's gotten worse." After evaluating the accounts of participants in these occasionally heated encounters

with Davis and speaking with Davis in person, Przislicki became concerned about Davis's fitness for duty. With advice from Dr. Robert Simon, the medical director of the Emergency Room (and another recipient of the April 5 memo), Przislicki concluded that Davis needed to submit to a fitness-for-duty examination. Przislicki explained to Dr. Patricia Kelleher, Stroger's director of employee health services, that there had been a noticeable change for the worse in Davis's behavior since October 2003. On May 3, Przislicki informed Davis that she had to go to employee health services for the examination. Davis got as far as meeting with Dr. Kelleher, but at that point Davis refused to submit to the examination. The human resources and employee health staff told her that she had three options: she could go to her own doctor, she could participate in the employee assistance program, or she could submit to the fitness-for-duty examination. Davis rejected everything and filed a union grievance. Eventually, after several meetings, she received an apology, she was allowed to return to work, and she was given back pay for the three weeks of work she had missed. This lawsuit followed.

Although Davis wanted to rely on her April 5 memo in her response to the defendants' motion for summary judgment on her First Amendment claim, the district court refused to take it into account because her complaint referred only to statements she made in March 2004, including one on March 24. Finding the information provided by Davis on the March complaints "utterly insufficient" to warrant constitutional protection, the district court awarded summary judgment against Davis on the First Amendment claim. Having disposed of both of Davis's federal claims on summary judgment, the district court declined to exercise jurisdiction over the state-law defamation claim.

## II

In appealing the grant of summary judgment on the First Amendment claim, Davis argues only that her memo of April 5 qualified for First Amendment protection. Although Davis forfeited this argument by not properly presenting this ground to the district court, Cook County arguably waived the forfeiture by quoting from the April 5 memo in the section of its brief arguing that Davis's complaints were not entitled to constitutional protection. Waiver or forfeiture either way does not matter, however, because four months after the district court issued its judgment, the Supreme Court decided *Garcetti v. Ceballos*, 547 U.S. 410 (2006), and it is clear that Davis cannot win under *Garcetti*'s standards.

*Garcetti* addressed the question whether a public employee (a deputy district attorney) could pursue a First Amendment claim against his employer (the Los Angeles County District Attorney's Office) when he suffered retaliation for speaking out about misrepresentations contained in an affidavit supporting a search warrant. The Court found it unnecessary to delve into the traditional analysis established by *Connick v. Myers*, 461 U.S. 138, 147-48 (1983), and *Pickering v. Bd. of Educ.*, 391 U.S. 563, 568 (1968), for evaluating employee speech. Instead, it asked a preliminary question: was the expression something done pursuant to the employee's professional duties? If so, then the First Amendment has no application. As the *Garcetti* Court put it, summarizing its ruling, "[o]ur precedents do not support the existence of a constitutional cause of action behind every statement a public employee makes in the course of doing his or her job." 547 U.S. at 426.

In an effort to avoid *Garcetti*, Davis asserts that "[a]t the very least, whether [her] letter was written as part of her duty as a nurse or as a citizen on a matter of public concern is an issue for the jury to decide[.]" But she goes on to admit that the subject of the letter was "the operation of the ER," and Davis's concern that "the ER was operating without any team-work and professionalism." Further, "[t]he inquiry into the protected status of speech is one of law, not fact." *Connick*, 461 U.S. at 148 n.7. Raising a First Amendment claim, without more, does not guarantee that a jury is necessary.

In *Sigsworth v. City of Aurora*, 487 F.3d 506 (7th Cir. 2007), we found that a public employee had not stated a claim because his allegations indicated that he was merely doing what was expected of him as a member of a police task force. Although Davis has not admitted outright that her speech was also intimately connected with her job, our examination of the record persuades us that no rational trier of fact could find otherwise. Davis does not contest Przislicki's deposition testimony regarding the job description of an ER registered nurse. According to Przislicki, a registered nurse must "take care of the patients, expedite the patients through the system and act as an advocate, working with physicians to give the best possible care."

Davis's memo reflects the concern of a conscientious nurse to ensure and contribute to the smooth functioning of the ER and to advocate for the well-being of the patients under her care. While drafting letters of complaint may not be a core job function of a nurse, a "focus on core job functions is too narrow after *Garcetti*, which asked only whether an employee's expressions were made pursuant to official responsibilities." *Spiegla v.*

*Hull*, 481 F.3d 961, 966 (7th Cir. 2007) (internal quotation marks omitted). Davis's memo discusses patient care, advocates on behalf of patients (as well as herself and similarly situated nurses), and details difficulties encountered in working with doctors. The issues she discusses in the memo concern particular job responsibilities of a registered nurse.

In an effort to show that the memo was not entirely a self-serving list of personal grievances—in other words, to show that the memo addressed a "matter of public concern"—Davis notes that the memo "described how another nurse was being taken away and Davis was forced to take care of twelve patients all by herself without any help. She also described the abuse that nurses went through every day." But, even if these problems in the aggregate may add up to a broader picture about the quality of health care at Stroger, Davis was still just describing the day-to-day job of a nurse. Under *Garcetti*, the question whether speech is about a matter of public concern does not come into play unless the court first finds that the speech was made as a citizen rather than as an employee doing her job. The speech upon which Davis would like to found her case was made pursuant to her duties as a public employee, and so it was not constitutionally protected.

## III

Davis also argues that the district court erred in dismissing her defamation claim. A district court's decision to decline to exercise supplemental jurisdiction over a state claim once the federal claims have been dismissed is reviewed for an abuse of discretion. *Williams Elecs.*

*Games, Inc. v. Garrity*, 479 F.3d 904, 906 (7th Cir. 2007). "[T]he general rule is that, when all federal claims are dismissed before trial, the district court should relinquish jurisdiction over pendent state-law claims rather than resolving them on the merits." *Wright v. Associated Ins. Cos.*, 29 F.3d 1244, 1251 (7th Cir. 1994). Exceptions to that rule of thumb exist (1) "when the statute of limitations has run on the pendent claim, precluding the filing of a separate suit in state court"; (2) "substantial judicial resources have already been committed, so that sending the case to another court will cause a substantial duplication of effort"; or (3) "when it is absolutely clear how the pendent claims can be decided." *Id.*

Davis's brief argues the merits of her defamation claim instead of addressing these factors. We see no need to delve into the merits, however. First, the statute of limitations in Illinois for defamation claims is one year. 735 ILCS 5/13-201; *Stobinske-Sawyer v. Village of Alsip*, 188 F. Supp. 2d 915, 920 (N.D. Ill. 2002). Because the events here occurred in 2004, the statute has run on Davis's claim unless a rule of tolling applies. As it happens, there is such a rule:

> [if] the action is dismissed by a United States District Court for lack of jurisdiction, . . . then, whether or not the time limitation for bringing such action expires during the pendency of such action, the plaintiff . . . may commence a new action [in state court] within one year or within the remaining period of limitation, whichever is greater, after . . . the action is dismissed by a United States District Court for lack of jurisdiction . . . .

735 ILCS 5/13-217. In all likelihood, this means that Davis is not barred by the statute of limitations from filing her defamation claim in state court. Second, the district

court disposed of the federal claims on summary judgment, and so "substantial judicial resources" have not yet been committed to the case. Finally, although Davis asserts that she can make out a *prima facie* case of defamation, she does not and cannot claim that it is "absolutely clear" how this claim would be decided. Thus, the court did not abuse its discretion in declining to exercise jurisdiction over Davis's defamation claim.

* * *

The judgment of the district court is AFFIRMED.

USCA-02-C-0072—7-16-08