In the

# United States Court of Appeals
## For the Seventh Circuit

No. 14-3074

LAURA KUBIAK,

*Plaintiff-Appellant,*

*v.*

CITY OF CHICAGO, *et al.*,

*Defendants-Appellees.*

Appeal from the United States District Court for the
Northern District of Illinois, Eastern Division.
No. 14-CV-1159 — **Samuel Der-Yeghiayan**, *Judge.*

ARGUED DECEMBER 7, 2015 — DECIDED JANUARY 11, 2016

Before FLAUM, WILLIAMS, and SYKES, *Circuit Judges*.

FLAUM, *Circuit Judge*. Officer Laura Kubiak was working in the Chicago Police Department's Office of News Affairs ("ONA") when she was verbally assaulted by her colleague, Officer Veeja Zala. Kubiak reported Zala to (1) ONA Director Melissa Stratton, (2) Kubiak's supervising Lieutenant, Maureen Biggane, and (3) the Internal Affairs Division ("IAD"). Three months later, Biggane ordered Kubiak to leave ONA and return to her prior position as a beat patrol

officer. Kubiak filed a complaint against the City of Chicago, Stratton, and Biggane, alleging retaliation in violation of the First Amendment and conspiracy to deprive her of her constitutional rights pursuant to 42 U.S.C. § 1983. The district court granted defendants' motion to dismiss for failure to state a claim on which relief can be granted. Kubiak appeals. We affirm.

## I. Background

Because we are reviewing a dismissal for failure to state a claim, we must take as true the facts alleged in Kubiak's complaint. *Tamayo v. Blagojevich*, 526 F.3d 1074, 1078 (7th Cir. 2008).

Kubiak worked as a beat patrol officer with the Chicago Police Department for fourteen years. Her primary duties were to patrol assigned areas, issue citations, make arrests, and conduct investigations. In 2000, Kubiak was detailed to the Office of News Affairs. Kubiak alleges that this was a "highly coveted detail" to a "prestigious desk job." At the ONA, Kubiak served as a liaison to the news media. Her responsibilities included "keeping members of the news media apprised of police activity by providing information on topics such as crimes committed, arrests made, and providing information with regard to community safety alerts."

On November 8, 2012, Officer Zala, another news media liaison at the ONA, allegedly verbally assaulted Kubiak as she was exiting the office at the end of her shift. Zala ran toward her, enraged by a work-related report Kubiak had drafted. He screamed, "Who the fuck do you think you are, you stupid bitch?" He shook his finger in Kubiak's face and swung his hand back as if to strike her. Kubiak quickly

backed away in fear. Officer Robert Perez was with Kubiak at the time of the incident and tried to calm Zala, telling him to "stop it." Zala continued to yell at Kubiak, saying, "You are nothing, you are a stupid bitch, you don't know how to be the police, I am the police, I am the real police."

Kubiak returned to her desk and called ONA Director Stratton. She told Stratton about the incident and said she feared Zala was going to strike her. Kubiak informed Stratton that Zala had previously directed similar outbursts toward her. During this phone call, Zala stood by Kubiak's desk and continued to berate and intimidate her. An ONA employee who witnessed Zala's conduct later spoke with Kubiak and expressed fear that Zala was going to shoot Kubiak.

Kubiak alleges that Zala has a history of violence. According to her complaint, around 2009, a jury returned a verdict in favor of the plaintiff in a suit against Zala for battery and excessive force. The City defended Zala at trial. Kubiak alleges that the City failed to correct Zala's behavior but rather gave him a prestigious news media liaison position in the ONA. Throughout his detail at the ONA, Zala often lost his temper and directed his outbursts toward his colleagues, including Kubiak.

The next day, Kubiak again spoke with Stratton. Stratton told Kubiak that she had already spoken with Zala and that she did not have time to discuss the incident further. On November 12, Kubiak requested a meeting with Biggane, her supervising Lieutenant, to discuss the incident. Biggane responded that she was too busy. Kubiak alleges that she continued to request meetings, but each time, Biggane responded that she was too busy. On November 27, Kubiak went to

Biggane's office to discuss the incident, but Biggane refused to discuss it.

On December 3, Kubiak submitted a memorandum to Biggane complaining about Zala, which initiated an Internal Affairs Division investigation. Kubiak subsequently gave a statement to the IAD investigators. Perez also provided a statement corroborating Kubiak's complaint. Kubiak alleges that after she gave her statement to the IAD, Officer Jose Estrada, who had been found guilty of excessive force and also worked at the ONA, told her that she "better be careful because [she] might be the one to get suspended or fired."

In mid-February, Kubiak learned that her IAD complaint against Officer Zala had been "sustained." Within days, Biggane cancelled Kubiak's detail to the ONA and reassigned Kubiak to a position as beat officer on a midnight shift in what Kubiak alleges is one of the most dangerous neighborhoods in Chicago. The same day, Perez was also removed from the ONA and reassigned as a beat officer. Kubiak and Perez were the only two officers who had their ONA details cancelled even though other members of the ONA had previously requested to transfer out of the ONA. At the time of her removal, Kubiak was the most senior member of the ONA and had not requested a transfer.

Stratton and Biggane made the decision to remove Kubiak and Perez from the ONA. Stratton and Biggane had the final authority to make these personnel decisions, which were not subject to further review. Kubiak alleges that Zala was never reprimanded and remains detailed to the ONA.

On February 18, 2014, Kubiak filed a complaint against the City of Chicago, Stratton, and Biggane. Kubiak asserted a

claim against all defendants alleging retaliation in violation of the First Amendment pursuant to § 1983, and a claim against Stratton and Biggane alleging conspiracy in deprivation of constitutional rights pursuant to § 1983.[1] Kubiak argued that by cancelling her detail to the ONA and assigning her to work as a beat patrol officer, defendants retaliated against her for engaging in protected speech. According to Kubiak, defendants engaged in a pattern of protecting and rewarding officers accused of violent misconduct while retaliating against those who exposed and reported the misconduct.

Defendants filed a motion to dismiss for failure to state a claim on which relief can be granted pursuant to Federal Rule of Civil Procedure 12(b)(6). The district court granted the motion and dismissed the claims with prejudice, concluding that Kubiak's speech was not constitutionally protected since Kubiak did not speak as a private citizen and did not speak on a matter of public concern. Kubiak appeals.

## II. Discussion

We review de novo a grant of a motion to dismiss based on Rule 12(b)(6). *Tamayo*, 526 F.3d at 1081. Rule 12(b)(6) permits a motion to dismiss a complaint for failure to state a claim upon which relief can be granted. Fed. R. Civ. P. 12(b)(6). To properly state a claim, a plaintiff's complaint must contain allegations that "plausibly suggest that the

---

[1] Kubiak also brought a state law claim of retaliation in violation of the Illinois Whistleblower Act, 740 ILCS § 174/1, but the district court declined to exercise supplemental jurisdiction over this claim and dismissed it without prejudice. Kubiak does not appeal the dismissal of her state law claim.

plaintiff has a right to relief, raising that possibility above a speculative level[.]" *EEOC v. Concentra Health Servs., Inc.*, 496 F.3d 773, 776 (7th Cir. 2007) (internal quotation marks omitted). We accept as true all of the well-pleaded facts in the complaint and draw all reasonable inferences in favor of the plaintiff. *Tamayo*, 526 F.3d at 1081.

## A. First Amendment Retaliation Claim

To establish a claim for retaliation in violation of the First Amendment, a public employee first must prove that her speech is constitutionally protected. *Swetlik v. Crawford*, 738 F.3d 818, 825 (7th Cir. 2013). For a public employee's speech to be protected under the First Amendment, the employee must establish that she spoke as a citizen on a matter of public concern. *Garcetti v. Ceballos*, 547 U.S. 410, 418 (2006). The determination of whether speech is constitutionally protected is a question of law. *Houskins v. Sheahan*, 549 F.3d 480, 489 (7th Cir. 2008).

### 1. *Kubiak Did Not Speak as a Private Citizen*

The district court held that Kubiak failed to allege facts that plausibly suggest that she spoke as a citizen. We agree. The Supreme Court has held that "when public employees make statements pursuant to their official duties, the employees are not speaking as citizens for First Amendment purposes, and the Constitution does not insulate their communications from employer discipline." *Garcetti*, 547 U.S. at 421. "Determining the official duties of a public employee requires a practical inquiry into what duties the employee is expected to perform, and is not limited to the formal job description." *Houskins*, 549 F.3d at 490 (citation omitted); *see also Garcetti*, 547 U.S. at 424–25 ("Formal job descriptions of-

ten bear little resemblance to the duties an employee actually is expected to perform ….").

First, Kubiak contends that she made her complaints about Zala not as part of her routine job duties, but rather as a citizen who was subjected to an assault by a violent Chicago police officer. She argues that she sufficiently pled that her speech was made as a citizen because her complaint identifies her primary job responsibility as being a liaison to the news media. Kubiak's complaint lists her ordinary and daily job duties as including: keeping members of the news media apprised of police activity, responding to inquiries from the news media, and monitoring the News Affairs email account.[2] Kubiak argues that as the public relations face of the Chicago Police Department, her professional duties did not include reporting misconduct of her coworkers, and as such, her complaints about Zala were made as a private citizen. We disagree.

Kubiak's concept of "official duties" is overly narrow. As we explained in *Houskins*, an employee's official duties are not limited to the formal job description. 549 F.3d at 490. We must make a practical inquiry into what Kubiak was expected to do as an employee. *See id.*; *Spiegla v. Hull*, 481 F.3d 961, 965–67 (7th Cir. 2007) (holding that a correctional officer spoke as an employee and not as a citizen when reporting supervisor's breach of prison security even though the of-

---

[2] Kubiak notes that her duties also included researching print, television, and online media; creating files of the Chicago Police coverage in the news; receiving and recording notifications from the field on potentially newsworthy events; preparing daily news clips and monthly safety related reports; maintaining files on high profile cases; and preparing media advisors and press releases.

ficer's primary responsibility was to monitor vehicle and foot traffic through the main gate). Generally, an employee who is verbally assaulted by a colleague would be expected to report the inappropriate behavior to a supervisor. Additionally, as the district court pointed out, in the context of a police department, it makes even more sense to expect officers to report that a fellow officer acted violently. Kubiak is a police officer, and as part of that job, she is responsible for protecting the public from harm, even though she was detailed to the ONA at the time of the complaints.[3]

Our conclusion that Kubiak spoke as an employee is further supported by the fact that her speech was intimately connected with her job. In *Davis v. Cook Cnty.*, the plaintiff nurse argued that her memorandum to the Employee Assistance Counselor, which contained complaints about being harassed by other employees when working in the hospital's

---

[3] Kubiak also argues that reporting Zala's actions was not "ordinarily" within the scope of her duties, relying on *Lane v. Franks*, 134 S. Ct. 2369, 2379 (2014) ("The critical question under *Garcetti* is whether the speech at issue is itself ordinarily within the scope of an employee's duties, not whether it merely concerns those duties."). However, Kubiak's reliance on *Lane* is misplaced. Employee grievances, such as Kubiak's complaints about Zala, are very different than the speech at issue in *Lane*—subpoenaed testimony at a former employee's corruption trials. *See Lane*, 134 S. Ct. at 2377. The *Lane* Court explained that testimony under oath by a public employee is outside the scope of his ordinary job duties and is thus citizen speech for purposes of the First Amendment. *Id.* at 2378. The Court reasoned that when a public employee testifies, any obligation he may have as an employee is "distinct and independent from the obligation, as a citizen, to speak the truth." *Id.* at 2379. In contrast, Kubiak's obligation to report Zala's verbal assault stemmed from her position as an ONA employee, and there was no independent obligation as a citizen to report Zala's conduct to her ONA supervisors.

emergency room, was citizen speech. 534 F.3d 650, 652 (7th Cir. 2008). We disagreed and held that the memorandum was employee speech. *Id.* at 653–54. We noted that "[w]hile drafting letters of complaint may not be a core job function of a nurse, a focus on core job functions is too narrow after *Garcetti* …." and that the plaintiff's speech was "intimately connected with her job." *Id.* at 653 (citation and internal quotation marks omitted).

Similarly, Kubiak's speech was intimately connected with her professional duties. She complained that her co-worker treated her inappropriately at work and yelled at her over a work-related report. Moreover, her speech was directed to her supervisor, the director of her office, and the IAD. Just as the plaintiff's memorandum in *Davis* "reflect[ed] the concern of a conscientious nurse to ensure and contribute to the smooth functioning of the ER," Kubiak's complaints about Zala reflected an employee's attempt to improve her work environment so that she would not be harassed again. *Id.* As a result, the district court correctly concluded that Kubiak's speech was made as a public employee and not as a private citizen.

### 2. *Kubiak's Speech Did Not Address a Matter of Public Concern*

The district court held that Kubiak failed to allege facts that plausibly suggest that she spoke on matter of public concern. The court noted that the facts alleged suggest that Kubiak's speech was focused on her personal interest in protecting herself from harassment by Zala. We agree.

The Supreme Court has defined "public concern" to mean "legitimate news interest," or "'a subject of general in-

terest and of value and concern to the public at the time of publication.'" *Meade v. Moraine Valley Cmty. Coll.*, 770 F.3d 680, 684 (7th Cir. 2014) (quoting *City of San Diego v. Roe*, 543 U.S. 77, 83–84) (2004) (per curiam)). "Whether an employee's speech addresses a matter of public concern must be determined by the content, form, and context of a given statement …." *Connick v. Myers*, 461 U.S. 138, 147–48 (1983). The *Connick* test requires us to look at the overall objective or point of the speech, as ascertained by those three factors. *Kristofek v. Vill. of Orland Hills*, 712 F.3d 979, 985 (7th Cir. 2013). Of the three factors, content is the most important, but the subject matter of the speech is not determinative. *Bivens v. Trent*, 591 F.3d 555, 560–61 (7th Cir. 2010); *Gustafson v. Jones*, 290 F.3d 895, 907 (7th Cir. 2002). Rather, we must focus on the "particular content (as opposed to the subject matter) of the speech …." *Bivens*, 591 F.3d at 561. The motive of the speaker is relevant as part of the context in which the speech was made but is not dispositive. *Kristofek*, 712 F.3d at 985. In sum, we ask whether the objective of the speech—as determined by content, form, and context—was to "bring wrongdoing to light" or to "further some purely private interest." *Id.*

Kubiak argues that she made her complaints to her supervisors and to the IAD out of fear for her own safety as well as for the safety of others. According to Kubiak, we should infer that she was motivated to help the public by notifying her superiors of the fact that Zala posed a threat of violence, and thus conclude that she spoke on a matter of public concern. However, the content, form, and context of Kubiak's speech convince us that the objective of Kubiak's complaints was to further her personal interest in remedying an employee grievance and that her speech did not address a matter of public concern.

First, as to the content of Kubiak's speech, Kubiak argues that speech involving police departments and misconduct of officers is always a matter of public concern. However, when analyzing the content of the speech, the broad subject matter is not determinative, and we must instead focus on the particular content of the speech. *Bivens*, 591 F.3d at 560–61. The precise content of Kubiak's speech focused on the work-related incident with Zala and on Kubiak's concerns about her own safety. Kubiak's complaint states that she informed Stratton "of what had occurred," "that she was afraid that Officer Zala was going to physically strike *her*," and that "Zala had similar outbursts in the past towards *her*" (emphasis added). The complaint also states that Kubiak requested a meeting with Biggane to "discuss the incident" and that Kubiak's memorandum to Biggane, which initiated the IAD investigation, "complain[ed] of Officer Zala's assault." Thus, the particular content of Kubiak's speech was focused on Zala's actions toward Kubiak personally. *See Houskins*, 549 F.3d at 491–92 (holding that a social worker's police report stating that a correctional officer had hit her did not address a matter of public concern because the report was "nothing more than [a] personal grievance against [the officer] in order to have him arrested for striking her").

Second, the form of Kubiak's speech also indicates that the objective of her speech was to air a personal grievance. Kubiak reported the incident to her superiors, Stratton and Biggane, and to the IAD. The fact that Kubiak's complaints about Zala were directed up the chain of command suggests that Kubiak's speech did not address a matter of public concern. *See Bivens*, 591 F.3d at 560 (holding that complaints the plaintiff made directly up the chain of command to his supervisors were not protected by the First Amendment).

Third, regarding the context of Kubiak's speech, the grievance arose from Kubiak's personal confrontation with Zala while at work. This fact indicates that the speech concerned a private issue and did not address a matter of public concern. *See id.* at 561–62 (noting that an officer's complaint about the safety of his working conditions "arose as a result of [the officer's] own illness and detailed his own exposure to environmental lead [at work]" and concluding that the speech was an "internal grievance [ ] on a matter of purely private interest").

Additionally, we consider the motive of the speaker as part of the context in which the speech was made. *Kristofek*, 712 F.3d at 985. Kubiak alleges that she was motivated by a concern for public safety, especially since a jury had previously returned a verdict in favor of the plaintiff in a suit against Zala for battery and excessive force. But the fact that Kubiak's complaints were all made internally suggests that she was primarily motivated by personal concerns. *Cf. id.* at 984–85 (noting that the plaintiff's "rather aggressive reaction" of going to the FBI with his suspicions, in addition to making internal complaints, suggested that he was not solely concerned with his personal interest but was also motivated by a desire to help the public); *see also Bivens*, 591 F.3d at 561 ("Although the fact that the speech was entirely internal does not itself render the speech unprotected, this fact does suggest that the grievance was personal in nature." (internal citation omitted)). In any event, motive is not dispositive. *Kristofek*, 712 F.3d at 985. Even accepting Kubiak's allegations as true and drawing all reasonable inferences in her favor, as we are required to do in reviewing a dismissal based on Rule 12(b)(6), *Tamayo*, 526 F.3d at 1081, Kubiak's mixed motives are not enough to show that the objective of her speech was

to bring wrongdoing to light, especially given the personal nature of her complaints.

In sum, the content, form, and context of Kubiak's speech show that her speech did not address a matter of public concern. Because Kubiak did not sufficiently allege facts that plausibly suggest that she spoke as a private citizen on a matter of public concern, the district court correctly determined that her speech was not entitled to First Amendment protection. *See Garcetti*, 547 U.S. at 418. Therefore, the district court properly dismissed Kubiak's complaint for failure to state a claim on which relief can be granted.

### B. Conspiracy Claim

Kubiak also claims that Stratton and Biggane entered into a conspiracy to deprive her of her constitutional rights. Since Kubiak's speech was not constitutionally protected, the district court properly dismissed Kubiak's conspiracy claim.

### III. Conclusion

For the foregoing reasons, we AFFIRM the judgment of the district court.