In the

# United States Court of Appeals

## For the Seventh Circuit

No. 17-1830

MICHAEL PLATT,

*Plaintiff-Appellant,*

*v.*

DOROTHY BROWN, ET AL.,

*Defendants-Appellees.*

Appeal from the United States District Court for the
Northern District of Illinois, Eastern Division.
No. 1:16-cv-3898 — **John Z. Lee**, *Judge.*

ARGUED SEPTEMBER 18, 2017 — DECIDED OCTOBER 5, 2017

Before BAUER, FLAUM, and SYKES, *Circuit Judges.*

FLAUM, *Circuit Judge.* Appellant Michael Platt, individually and on behalf of a putative class, challenges Illinois's imposition of a mandatory 1% bail bond processing fee pursuant to 725 Ill. Comp. Stat. § 5/110-7. He argues this fee violates his and similarly situated plaintiffs' due process and equal protection rights under the United States and Illinois Constitutions. Appellant also alleges this practice violates the uni-

formity clause of the Illinois Constitution and constitutes un-
just enrichment under Illinois common law. The district court
dismissed his complaint for failure to state a claim. We affirm.

## I. Background

Prior to January 1, 2016, criminal defendants in Cook
County could secure their pretrial release in three ways: (1)
personal recognizance, *see* 725 Ill. Comp. Stat. § 5/110-2; (2)
execution of a full deposit bail bond, to be fully returned to
the defendant upon performance of the bond conditions, *see
id.* § 5/110-8; or (3) execution of a 10% bail bond, 10% of which
(*i.e.*, 1% of the total bail amount) is retained by the State upon
performance of the bond conditions (the "Bail Bond Fee" or
the "Fee"), *see id.* § 5/110-7.

In 2014, plaintiff Michael Platt was arrested and charged
with murder. His bail amount was set at $2 million. Plaintiff
secured his pretrial release by executing a 10% bail bond of
$200,000. After plaintiff's trial (where he was acquitted), the
Office of the Clerk of the Circuit Court of Cook County re-
turned $180,000—his original 10% deposit less the 10% Bail
Bond Fee of $20,000.[1]

In 2015, the Illinois General Assembly passed H.B. 1119,
which contained an amendment to § 5/110-7 that caps the Bail
Bond Fee at $100 in counties with a population greater than
3,000,000. H.B. 1119, 99th Gen. Assemb., Reg. Sess. (Ill. 2015).
H.B. 1119 became effective January 1, 2016. *Id.*

---

[1] The return of plaintiff's bail deposit was dependent upon the satis-
faction of his the bond conditions, not upon his ultimate acquittal. Thus,
the $180,000 would have been returned even if he was found guilty.

Plaintiff brings his suit individually and on behalf of a putative class of individuals who paid a Bail Bond Fee of more than $100 in the five years preceding January 1, 2016. He sues Clerk of the Circuit Court of Cook County Dorothy Brown and Cook County Treasurer Maria Pappas in their official capacities. Plaintiff alleges that the State's retention of the 1% Bail Bond Fee violated his and other plaintiffs' due process rights under the United States and Illinois Constitutions because the Fee bears no rational relationship to the cost incurred in administering bail bonds. Furthermore, plaintiff asserts that the Fee violated his equal protection rights under the United States and Illinois Constitutions because he and other similarly situated plaintiffs paid significantly higher Bail Bond Fees than other criminal defendants. Lastly, plaintiff claims that the Fee violates the uniformity clause of the Illinois Constitution and constitutes unjust enrichment under Illinois common law.

Defendants-appellees moved to dismiss the complaint for failure to state a claim. The district court granted the motion. For the reasons that follow, we affirm.

## II. Discussion

We review a district court's grant of a Rule 12(b)(6) motion to dismiss de novo. *Kubiak v. City of Chicago*, 810 F.3d 476, 480 (7th Cir. 2016). To survive a motion to dismiss, the plaintiff must allege "enough facts to state a claim to relief that is plausible on its face." *Bell Atlantic Corp. v. Twombly*, 550 U.S. 544, 570 (2007). "A claim has facial plausibility when the plaintiff pleads factual content that allows the court to draw the reasonable inference that the defendant is liable for the misconduct alleged." *Ashcroft v. Iqbal*, 556 U.S. 662, 678 (2009). "The

plausibility standard is not akin to a 'probability require-ment,' but it asks for more than a sheer possibility that a de-fendant has acted unlawfully." *Id.* (quoting *Twombly*, 550 U.S. at 556). In reviewing a 12(b)(6) motion, "[w]e accept as true all of the well-pleaded facts in the complaint and draw all rea-sonable inferences in favor of the plaintiff." *Kubiak*, 810 F.3d at 480–81.

### A.  Federal Procedural Due Process

Under our traditional two-step procedural due process analysis, we (1) identify the protected property or liberty in-terest at stake; and (2) determine what process is due under the circumstances. *Charleston v. Bd. of Trs. of Univ. of Ill. at Chi.*, 741 F.3d 769, 772 (7th Cir. 2013). Here, the Bail Bond Fee is purely ministerial. There is no legal or factual discretion on the part of the officials in imposing the Fee; it is automatically calculated and applied to every criminal defendant utilizing the 10% bail bond system. Plaintiff, however, does not criti-cize the perfunctory nature of the Fee's implementation scheme; he objects to the percentage Fee itself. Plaintiff acknowledged as much during oral argument. No amount of process would provide plaintiff the remedy he seeks: an order declaring the Fee, irrespective of its enforcement framework, unconstitutional. Thus, he has failed to state a claim for a pro-cedural due process violation.

### B.  Federal Equal Protection

The Equal Protection Clause of the Fourteenth Amend-ment states that "[n]o State shall … deny to any person within its jurisdiction the equal protection of the laws." U.S. Const. amend. XIV, § 1. Plaintiff alleges the Fee violates his equal pro-tection rights because some criminal defendants who utilize

the 10% bail bond system pay fees significantly less than the $20,000 he was charged. *See* 725 Ill. Comp. Stat. § 5/110-7(f) (setting minimum Bail Bond Fee at $5). He believes this to be an irrational result.

Plaintiff, however, ignores the fact that every person who opts to use the 10% bail bond system is charged the same 1% fee. Thus, all criminal defendants in this category are treated exactly the same. In application, this of course results, as with any percentage-based system, in discordant outcomes. Such variation, however, merely constitutes disparate impact, not disparate treatment. As this Court has stated previously, disparate impact "is not a permissible basis for finding a denial of equal protection." *Smith v. Boyle*, 144 F.3d 1060, 1064 (7th Cir. 1998). Thus, plaintiff has failed to state a plausible equal protection claim.

## C.  Illinois Uniformity and Equal Protection

In addition to his federal constitutional claims, plaintiff also alleges the Bail Bond Fee violates the uniformity and equal protection clauses of the Illinois constitution.

Plaintiff's claim as to the Illinois uniformity clause fails for the same reason as his federal equal protection claim. The uniformity clause states that, "[i]n any law classifying the subjects or objects of non-property taxes or fees, the classes shall be reasonable and the subjects and objects within each class shall be taxed uniformly." Ill. Const. art. IX, § 2. The burden is on the plaintiff to demonstrate that a classification is arbitrary or unreasonable. *Geja's Cafe v. Metro. Pier & Exposition Auth.*, 606 N.E.2d 1212, 1216 (Ill. App. Ct. 1992). If a set of facts "can be reasonably conceived that would sustain it, the classification must be upheld." *Id.* As noted above, however, here

there is no classification to challenge; everyone within the 10% bail bond system is treated exactly the same. Given this equal treatment, there is no violation of the uniformity clause.

Plaintiff's Illinois equal protection claim similarly fails. The uniformity clause "was intended to encompass the equal protection clause and add to it even more limitations on government." *Id.* at 1215. Thus, "[i]f a tax is constitutional under the uniformity clause, it inherently fulfills the requirements of the equal protection clause." *Id.*

### D. Substantive Due Process

Plaintiff further contends that the Bail Bond Fee violates his substantive due process rights under the United States and Illinois Constitutions. Specifically, he argues that there is no rational relationship between the purported cost of processing a bail bond and the $20,000 Bail Bond Fee he was ultimately charged.

Both the Supreme Court and this Court have previously emphasized "how limited the scope of the substantive due process doctrine is." *Dunn v. Fairfield Cmty. High Sch. Dist. No. 225*, 158 F.3d 962, 965 (7th Cir. 1998) (citing *Washington v. Glucksberg*, 521 U.S. 702 (1997)). "Unless a governmental practice encroaches on a fundamental right, substantive due process requires only that the practice be rationally related to a legitimate government interest, or alternatively phrased, that the practice be neither arbitrary nor irrational." *Lee v. City of Chicago*, 330 F.3d 456, 467 (7th Cir. 2003). It is undisputed that there is no fundamental right at issue here. *See Schilb v. Kuebel*, 404 U.S. 357, 365 (1971) (finding that the Bail Bond Fee "smacks of administrative detail and of procedure and is hardly to be classified as a 'fundamental' right or as based

upon any suspect criterion"). Rather, the parties dispute the outcome of the rational basis test.

Plaintiff argues that the Bail Bond Fee, as applied to him and anyone who paid over $100 in the five years leading to January 1, 2016, bears no rational relationship to the actual cost of processing their bonds (which he alleges is less than $100). As defendants note, however, the cost of processing a bail bond need not precisely equal the Bail Bond Fee. "[T]he constitutionality of a fee for a government service does not depend on proof of an exact equality between the cost of the service and the size of the fee." *Markadonatos v. Village of Woodridge,* 760 F.3d 545, 547 (7th Cir. 2014) (en banc) (3-2-1-4 decision) (Posner, J., concurring in the judgment). Rather, the fee need only "be rationally related to *a* legitimate government interest." *Lee,* 330 F.3d at 467 (emphasis added). In other words, under rational basis review, "the challenging party bears the burden of negating 'every conceivable basis which might support'" a regulation. *Foxxxy Ladyz Adult World, Inc. v. Village of Dix,* 779 F.3d 706, 720 (7th Cir. 2015) (citation omitted). Moreover, "it is entirely irrelevant … whether the conceived reason for the challenged [regulation] actually motivated the legislature. [A] legislative choice is not subject to courtroom fact-finding and may be based on rational speculation unsupported by evidence or empirical data." *Id.* (alterations in original) (quoting *FCC v. Beach Commc'ns, Inc.,* 508 U.S. 307, 315 (1993)).

Here, the Bail Bond Fee is rationally related to multiple legitimate government interests. First, the Fee incentivizes criminal defendants to avail themselves of the full deposit bail bond system. Under the 10% system, the State bears 90% of

the risk that a criminal defendant might jump bail. The government maintains a legitimate interest in reducing its exposure to this liability. Imposing a 1% surcharge on the 10% system makes the preferred full deposit system more enticing. This is particularly true for those with higher bail amounts, where the state not only carries more risk, but the defendant also forfeits a greater Bail Bond Fee.

Second, a flat percentage Fee is simple and easy to administer. This is not to say that other, equally straightforward schemes (a flat $100 fee, for instance) do not exist. Under a substantive due process challenge, however, we do not "second-guess legislative choices," *Heffner v. Murphy*, 745 F.3d 56, 79 (3d Cir. 2014), or evaluate the "desirability or value of" different policy alternatives; such is a "distinctively legislative function." *Rhinebarger v. Orr*, 839 F.2d 387, 390 (7th Cir. 1988).

Third, the Bail Bond Fee defrays the costs of administering the bail bond system: both the administrative costs as well as the costs of those who jump bail. *See Schilb*, 404 U.S. at 363 n.8 ("The ten percent of the deposit retained by the county will offset in monetary amount the costs of handling bail bonds … and any loss resulting from the occasional bail jumper … .") (quoting Ill. Comp. Stat. Ann., ch. 38, cmt. background at 300 (Smith-Hurd 1970)); *see also Payton v. County of Carroll*, 473 F.3d 845, 852 (7th Cir. 2007) (finding no due process violation where plaintiff challenged administrative fee to be paid prior to release on bail because sheriffs had a "legitimate interest in recouping some of the costs of administering the bail system"). The State's ability to account for these costs helps ensure the stability of an affordable bond service run by the courts rather than a for-profit entity. In short, the Bail Bond

Fee bears a rational relationship to Illinois's legitimate interests in encouraging the use of the full deposit system, creating a simple method of administration, and defraying the expenses of administering the bail bond system. These motives satisfy the deferential rational basis standard.[2]

### E. Unjust Enrichment

One cause of action remains. Plaintiff alleges that defendants were unjustly enriched by collecting invalid and unconstitutional bail bond fees to which they were not entitled. This Court, however, has held that "if an unjust enrichment claim rests on the same improper conduct alleged in another claim, then the unjust enrichment claim will be tied to this related claim—and, of course, unjust enrichment will stand or fall with the related claim." *Cleary v. Philip Morris Inc.*, 656 F.3d 511, 517 (7th Cir. 2011). As this opinion indicates, Illinois's Bail Bond Fee is not unconstitutional. Thus, plaintiff's unjust enrichment claim must also fail.

### III. Conclusion

For the foregoing reasons, we AFFIRM the judgment of the district court.

---

[2] Illinois courts "apply a limited version of the lockstep doctrine, adhering to U.S. Supreme Court precedent concerning the federal constitution when interpreting cognate provisions of the state constitution." *Gen. Auto Serv. Station v. City of Chicago*, 526 F.3d 991, 998 n.6 (7th Cir. 2008). Thus, plaintiff's Illinois due process claim similarly fails.