In the

# United States Court of Appeals

## For the Seventh Circuit

No. 21-1367

SYLVIA LESZANCZUK,

*Plaintiff-Appellant,*

*v.*

CARRINGTON MORTGAGE SERVICES, LLC,

*Defendant-Appellee.*

Appeal from the United States District Court for the
Northern District of Illinois, Eastern Division.
No. 19-cv-3038 — **Robert M. Dow Jr.**, *Judge.*

ARGUED OCTOBER 29, 2021 — DECIDED DECEMBER 28, 2021

Before SYKES, *Chief Judge*, and KANNE and HAMILTON, *Circuit Judges*.

KANNE, *Circuit Judge*. After Sylvia Leszanczuk defaulted on her mortgage, her mortgage servicer, Carrington Mortgage Services, inspected her residence and charged her a $20.00 fee for the inspection. Leszanczuk brought a putative class action against Carrington, alleging that the fee constituted a breach of her mortgage contract under Illinois law and violated the Illinois Consumer Fraud and Deceptive Business Practices

Act ("ICFA"). The district court dismissed her second
amended complaint with prejudice for failure to state plausi-
ble claims. We affirm.

## I. BACKGROUND

On January 29, 2010, Leszanczuk executed a mortgage
contract to secure a loan on her Illinois residential property.
The mortgage was insured by the Federal Housing Admin-
istration ("FHA") of the U.S. Department of Housing and Ur-
ban Development ("HUD").

After Carrington acquired the mortgage and took over
loan servicing, Leszanczuk contacted Carrington by phone in
December 2016 to make her December mortgage payment.
Leszanczuk's asserts that during this conversation, Carring-
ton told her that her account was not yet set up in their system
and they had no way to receive a payment from her at that
time, and then assured her that her account was in a "grace
period" and she did not have to make payments until her ac-
count was set up. Nonetheless, at some point in early 2017
Carrington found Leszanczuk to be in default on the mort-
gage by failing to make required payments. (These facts do
not affect the outcome of the case. At oral argument,
Leszanczuk's counsel affirmed that, for purposes of her
claims, it does not matter what the reason for the default was.)

Carrington then conducted a visual drive-by inspection of
Leszanczuk's property. Carrington charged Leszanczuk
$20.00 for the inspection and disclosed the fee to Leszanczuk
in her March 2017 monthly statement. According to
Leszanczuk, Carrington knew or should have known that she
occupied her property because (1) they had spoken on the
phone prior to the inspection about setting up the loan in

Carrington's system and (2) Carrington would mail monthly mortgage statements to Leszanczuk at the property's address. Despite alleging that she had an earlier phone conversation with Carrington, Leszanczuk also alleged that Carrington made no attempt to contact her by phone prior to the drive-by inspection.

Leszanczuk sued Carrington, bringing claims for breach of the mortgage contract and for violations of the ICFA, 815 Ill. Comp. Stat. 505/2, on behalf of putative nationwide and Illinois classes. In the operative second amended complaint, Leszanczuk alleged that Carrington breached her mortgage contract by charging her the $20.00 inspection fee when it "knew, or should have known," that she occupied her property, in purported violation of a HUD regulation, 24 C.F.R. § 203.377 (2021), which Leszanczuk claimed limits the fees Carrington may charge under the contract and is incorporated into her contract. Leszanczuk also alleged that charging the inspection fee was an unfair practice under the ICFA.

The district court granted Carrington's motion to dismiss under Federal Rule of Civil Procedure 12(b)(6) and dismissed both of Leszanczuk's claims with prejudice. The court rejected Leszanczuk's interpretation of her mortgage contract and found that the fees Carrington may charge under the contract are not limited by § 203.377. The court also concluded that charging Leszanczuk the $20.00 inspection fee was not an unfair practice because it did not offend public policy and was not oppressive. Noting that Leszanczuk had not cured the defects the court identified in earlier complaints and that further amendment would therefore be futile, the court denied Leszanczuk leave to amend. Leszanczuk now appeals.

## II. ANALYSIS

Leszanczuk maintains that she has stated claims for breach of contract and for violations of the ICFA. We review *de novo* the district court's grant of the Rule 12(b)(6) motion to dismiss, accepting all well-pleaded factual allegations as true and drawing all reasonable inferences in Leszanczuk's favor. *See Kubiak v. City of Chicago*, 810 F.3d 476, 480 (7th Cir. 2016).

*A. Breach-of-Contract Claim*

Leszanczuk argues that her mortgage contract did not permit Carrington to charge her the $20.00 inspection fee. In pertinent part, the mortgage contract provides as follows:

- Paragraph 5, titled "Occupancy, Preservation, Maintenance and Protection of the Property; Borrower's Loan Application; Leaseholds," provides: "Lender may inspect the Property if the Property is vacant or abandoned or the loan is in default. Lender may take reasonable action to protect and preserve such vacant or abandoned Property."

- Paragraph 7, titled "Charges to Borrower and Protection of Lender's Rights in the Property," provides that, if the borrower fails to perform the covenants and agreements contained in the contract, then "Lender may do and pay whatever is necessary to protect the value of the Property and Lender's rights in the Property." It further provides, "Any amounts disbursed by Lender under this paragraph shall become an additional debt of Borrower and be secured by this Security Instrument."

- Paragraph 8, titled "Fees," states in its entirety: "Lender may collect fees and charges authorized by the Secretary [of HUD]."

Leszanczuk contends that Paragraph 8 incorporates § 203.377 and thereby limits the fees the lender may collect from the borrower to those authorized by that regulation. That regulation provides that the lender is responsible for monthly inspections of a property after the borrower has defaulted on the loan and vacated the property. 24 C.F.R. § 203.377. It further provides that, once a mortgage payment is forty-five days late and the lender has been unable to reach the borrower by phone, the lender is responsible for a visual inspection of the property to determine whether it is vacant. *Id.* According to Leszanczuk, § 203.377 has been interpreted to mean that if a property is known to be occupied, no inspections are required by HUD or authorized for reimbursement. Therefore, she continues, because she alleged that Carrington knew or should have known that she was occupying her property, the mortgage contract, incorporating § 203.377, prohibited Carrington from charging her the inspection fee.

Whether § 203.377 means what Leszanczuk says it means is discussed in further depth below as that issue relates to Leszanczuk's ICFA claim. For purposes of her breach-of-contract claim, suffice to say that the mortgage contract does not evince an intent to incorporate § 203.377 or to prohibit inspection fees. "Under Illinois law, a document is incorporated by reference into the parties' contract only if the parties intended its incorporation." *188 LLC v. Trinity Indus., Inc.*, 300 F.3d 730, 736 (7th Cir. 2002) (citing *Wilson v. Wilson*, 577 N.E.2d 1323, 1329 (Ill. App. Ct. 1991)). Mere reference to "HUD regulations fall[s] short of the showing necessary to demonstrate that the

parties intended to incorporate the regulations, in their entirety, into their mortgage agreement." *Hayes v. M & T Mortg. Corp.*, 906 N.E.2d 638, 641 (Ill. App. Ct. 2009). Leszanczuk fails to identify specific contractual language that shows an intent to completely adopt HUD regulations. Paragraph 8's reference to "fees and charges authorized by the Secretary" does not demonstrate an intent to make the relevant regulations enforceable under the mortgage contract, let alone § 203.377, which does not even mention fees. *See Hayes*, 906 N.E.2d at 641.

At bottom, the plain language of the contract does not prohibit Carrington from charging inspection fees. *See Gallagher v. Lenart*, 874 N.E.2d 43, 58 (Ill. 2007) ("A court must initially look to the language of a contract alone, as the language, given its plain and ordinary meaning, is the best indication of the parties' intent."). The mortgage contract expressly allows Carrington's charge of the inspection fee as a "necessary" expenditure to protect the value of the property after Leszanczuk's default. Paragraph 5 permits the lender to inspect the property "if … the loan is in default," while Paragraph 7 authorizes the lender to "pay whatever is necessary to protect the value of the Property" if the borrower fails to keep her end of the bargain and to make those expenditures "an additional debt of Borrower." Leszanczuk points out that the contract is silent on whether the lender may collect fees for inspecting properties that are owner-occupied, but there is nothing prohibiting it from doing so, either.

Leszanczuk does not argue that the inspection fee fails to qualify as a "necessary" expenditure under the plain language of Paragraphs 5 and 7; rather, she contends that Paragraph 8 "defines the contours of 'necessary' described in

Paragraph 7." (Appellant's Br. at 22.) But contrary to Leszanczuk's contention, Paragraph 8's permissive language does not operate to "explicitly" restrict the authority granted by Paragraphs 5 and 7. (*Id.* at 11.) Paragraph 8 simply states that the lender "may collect fees and charges authorized by the Secretary." Given its plain and ordinary meaning, this language does not indicate that the lender can collect *only* fees and charges authorized by the Secretary and is barred from collecting unauthorized fees. Rather, it conveys that the lender may, but does not have to, collect additional fees that are permitted by the Secretary. A comparison to Paragraph 9 makes Paragraph 8's meaning even clearer. Section (a) of Paragraph 9 provides, "Lender may, except as limited by regulations issued by the Secretary, in the case of payment defaults, require immediate payment in full of all sums secured by this Security Instrument." As the district court correctly observed, Paragraph 9, unlike Paragraph 8, "explicitly limits [Carrington's] actions by reference to HUD regulations," and "[i]f the parties intended Paragraph 8 to impose similar limitations, they could have used similar language."

Leszanczuk offers several arguments in favor of her preferred interpretation, but all are unavailing. Leszanczuk cites a number of lower court decisions to support her argument that her mortgage contract should be read to incorporate HUD regulations. *See, e.g.*, *Mathews v. PHH Mortg. Corp.*, No. 20-CV-00200-JFH-JFJ, 2020 WL 5260813, at *1 (N.D. Okla. Sept. 3, 2020); *In re Ruiz*, 501 B.R. 76 (Bankr. E.D. Pa. 2013). But these cases, analyzing different contracts mostly under other states' laws, do not persuade us to conclude that *this* contract should be read to incorporate § 203.377 under Illinois law, where the contract does not evince an intent to do so.

Leszanczuk takes issue with the district court's reliance on *Majchrowski v. Norwest Mortg., Inc.*, 6 F. Supp. 2d 946 (N.D. Ill. 1998), *abrogation recognized on other grounds by Cement-Lock v. Gas Tech. Inst.*, No. 05 C 0018, 2006 WL 3147700, at *1 (N.D. Ill. Nov. 1, 2006), and *Walker v. Countrywide Home Loans, Inc.*, 121 Cal. Rptr. 2d 79 (Cal. Dist. Ct. App. 2002), to conclude that Paragraphs 5 and 7 authorize the collection of inspection fees. She maintains that those cases addressed conventional mortgages that are not insured by the FHA and therefore "do not involve HUD regulations and do not contain the equivalent of Paragraph 8 of the Mortgage at issue here." (Appellant's Br. at 19.) But, as discussed, and as the district court explained, FHA-insured mortgages do not automatically incorporate HUD regulations and Paragraph 8 does not limit the fees that may be charged. Thus, these cases, interpreting contractual language which is substantially similar to that in Paragraphs 5 and 7, are persuasive. They support the interpretation of Paragraphs 5 and 7 as authorizing the inspection fee at issue.

Leszanczuk contends that the district court's reading of the contract renders Paragraph 8 superfluous. *See Land of Lincoln Goodwill Indus., Inc. v. PNC Fin. Servs. Grp., Inc.*, 762 F.3d 673, 679 (7th Cir. 2014) ("[W]henever possible we attempt to give meaning to every provision of the contract and avoid a construction that would render a provision superfluous."). Leszanczuk explains that, if the contract were read to permit charges whether or not they are authorized by HUD, Paragraph 8—which, according to Leszanczuk, permits *only* charges authorized by HUD—would be rendered superfluous. Again, however, Leszanczuk's interpretation of Paragraph 8 is incorrect. Paragraph 8 is permissive and does not limit the fees Carrington may charge to those authorized by HUD.

Read properly, Paragraph 8 still serves a purpose in the contract because, as Carrington explains, it "authorizes an entire category of 'additional charges' not otherwise permitted by Paragraphs 5 and 7, *i.e.*, charges that are authorized by the Secretary." (Appellee's Br. at 13.) Indeed, it is Leszanczuk's interpretation that would render a contractual provision superfluous—if Paragraph 8 were read to "define[] the contours of" Paragraph 7 and limit the fees that may be charged thereunder (Appellant's Br. at 22), then Paragraph 7 would serve no purpose. We cannot endorse such an interpretation.

Finally, Leszanczuk urges us to apply canons of construction to reach her preferred interpretation. But, as explained, the contract clearly and unambiguously permits the assessment of inspection fees against the borrower. While Leszanczuk maintains her interpretation is "reasonable," demonstrating that the mortgage is "ambiguous" (Appellant's Br. at 24), "[a] contract is not rendered ambiguous merely because the parties disagree on its meaning," *Cent. Ill. Light Co. v. Home Ins. Co.*, 821 N.E.2d 206, 214 (Ill. 2004). Accordingly, because the mortgage contract is unambiguous, we "need not utilize canons of construction … and should interpret the words with their popularly understood meaning." *City of Chicago v. Elm State Prop. LLC*, 69 N.E.3d 390, 395 (Ill. App. Ct. 2016).

As Carrington aptly observes, Leszanczuk appears to "begin[] with the legal conclusion that the HUD [r]egulation is incorporated and then searches for a supporting rationale." (Appellee's Br. at 25.) But the district court correctly concluded that § 203.377 is not incorporated in the contract and that the contract expressly permits the inspection fee at issue.

Leszanczuk has failed to state a claim for breach of her mortgage contract.

### B. ICFA Claim

Leszanczuk argues that charging her the inspection fee was an unfair practice, in violation of the ICFA. *See Siegel v. Shell Oil Co.*, 612 F.3d 932, 934 (7th Cir. 2010) ("The elements of a claim under the ICFA are: (1) a deceptive or unfair act or practice by the defendant; (2) the defendant's intent that the plaintiff rely on the deceptive or unfair practice; and (3) the unfair or deceptive practice occurred during a course of conduct involving trade or commerce."). To determine whether a practice is unfair, we consider "(1) whether the practice offends public policy; (2) whether it is immoral, unethical, oppressive, or unscrupulous; [and] (3) whether it causes substantial injury to consumers." *Robinson v. Toyota Motor Credit Corp.*, 775 N.E.2d 951, 961 (Ill. 2002). "All three criteria do not need to be satisfied to support a finding of unfairness. A practice may be unfair because of the degree to which it meets one of the criteria or because to a lesser extent it meets all three." *Id.* (quoting *Cheshire Mortg. Serv., Inc. v. Montes*, 612 A.2d 1130, 1143–44 (Conn. 1992)).

Regardless of whether the ICFA claim is duplicative of the breach-of-contract claim, as Carrington contends, it fails on the merits. Leszanczuk has failed to adequately allege that the inspection fee offended public policy, was oppressive, or caused her substantial injury.

### 1. Offense to Public Policy

Leszanczuk maintains that the charge of the inspection fee offended public policy because it purportedly violated § 203.377. A practice offends public policy if it violates a

standard of conduct embodied in a statute, the common law, or otherwise, *i.e.*, if "it is within at least the penumbra of some common-law, statutory or other established concept of unfairness." *Elder v. Coronet Ins. Co.*, 558 N.E.2d 1312, 1316 (Ill. App. Ct. 1990) (quoting *FTC v. Sperry & Hutchinson Co.*, 405 U.S. 233, 244–45 n.5 (1972)).

The HUD regulation provides, in full,

> The mortgagee, upon learning that a property subject to a mortgage insured under this part is vacant or abandoned, shall be responsible for the inspection of such property at least monthly, if the loan thereon is in default. When a mortgage is in default and a payment thereon is not received within 45 days of the due date, and efforts to reach the mortgagor by telephone within that period have been unsuccessful, the mortgagee shall be responsible for a visual inspection of the security property to determine whether the property is vacant. The mortgagee shall take reasonable action to protect and preserve such security property when it is determined or should have been determined to be vacant or abandoned until its conveyance to the Secretary, if such action does not constitute an illegal trespass. "Reasonable action" includes the commencement of foreclosure within the time required by § 203.355(b) of this part.

24 C.F.R. § 203.377. Leszanczuk does not dispute that a lender may inspect a property whenever it wants; she maintains that the lender cannot charge fees for nonmandatory inspections, *i.e.*, inspections when the property is occupied by the borrower. But the regulation itself does not mention fees. Relying on three nonbinding sources, Leszanczuk claims that HUD has interpreted § 203.377 to mean that if a property is known

to be occupied, no inspections are required or authorized for reimbursement by HUD or the borrower.

First, Leszanczuk points to HUD Mortgagee Letter 81-26, titled "Property Inspection Fees," interpreting mortgagees' "responsibilities for property inspections and applicable rules for reimbursement" as set forth in 24 C.F.R. §§ 203.377 and 203.402(g) and HUD Administration of Insured Home Mortgages Handbook (4330.1). 1981 WL 389744, at *1 (June 16, 1981). Leszanczuk relies on the portion of the Mortgagee Letter which states that "[o]nce the property has been found to be occupied … no further inspections are required by HUD and reimbursement would not be allowed," *id.*, contending that because Carrington knew or should have known that she occupied her property and did not attempt to reach her by phone to confirm, it therefore cannot be reimbursed for the property inspection.

Leszanczuk takes this statement out of context. In relevant part, the Mortgagee Letter provides,

> It is HUD's intent to permit mortgagees to be reimbursed for the cost of any mandatory inspection which is performed. This includes any inspection made after the mortgagee learns that the property is vacant or abandoned, or after it has been unable to contact the mortgagor by telephone during the initial 45-day period of a delinquency. Reimbursement for the latter inspection is allowed regardless of whether the property is found to be vacant or occupied, and regardless of whether the mortgagee's representative also talks to the mortgagor about the delinquency during the course of the inspection. Once the property has been found to be occupied, however, no further inspections are required by

> HUD and reimbursement would not be allowed. Although mortgagees are required, as a last resort, to visit the property in an attempt to arrange a face-to-face interview to discuss a delinquency (24 CFR 203.604) this is not a reimbursable expense. However where a visit to the property to arrange an interview is combined with the initial inspection to determine whether the property is vacant, reimbursement would be authorized for the initial inspection. Where a visit to the property is made solely for arranging an interview or conducting an interview, no reimbursement would be authorized.

1981 WL 389744, at *1. As the district court found, the purpose of the Letter is to establish that mortgagees may be reimbursed *by HUD* for performing *mandatory* inspections. The Letter does not discuss whether the mortgagee may demand reimbursement from the mortgagor for performing other inspections. There is also no indication that the mortgagee must first verify occupancy by phone for reimbursement to be permitted.

Second, Leszanczuk points to Chapter 9 of HUD's Administration of Insured Home Mortgages Handbook (4330.1). Part 9-9 describes the mortgagee's responsibility to inspect, preserve, and protect the property in the case of default. Leszanczuk points to Section 9-9(A)(2)(d), which provides, "If there is evidence that the mortgagee knew the mortgagor was still in occupancy … charges [of inspection fees] are inappropriate and must not be charged to the mortgagor or included on a claim for insurance benefits." As Carrington points out, however, this portion of Handbook 4330.1 was superseded. Carrington cites a June 24, 2015, Transmittal Letter for the FHA Single Family Housing Policy Handbook (4000.1) which

states that Handbook 4000.1 took the place of several portions—including Chapter 9—of Handbook 4330.1, effective March 14, 2016 (before Carrington conducted the inspection here). The parallel provision of Handbook 4000.1 only addresses mandatory inspections and does not mention whether inspection fees are prohibited when the borrower continues to occupy the property. *See* HUD Single Family Housing Policy Handbook (4000.1) § III(A)(2)(h)(xi)(B). Leszanczuk maintains that Handbook 4330.1 is still in effect because it "appears current on HUD's website" (Appellant's Reply Br. 23), but the Transmittal Letter indicates that partially superseded Handbooks will remain on the website for informational purposes.

Finally, Leszanczuk also cites HUD Mortgagee Letter 10-18, titled "Update of Property and Preservation (P&P) Requirements and Cost Reimbursement Procedures," which merely outlines "inspection requirements and types of inspections" as set forth in § 203.377 and HUD Handbook 4330.1, but does not purport to limit fees for inspections. 2010 WL 1976742, at *5.

In short, these sources do not help Leszanczuk establish that § 203.377 embodies a policy of prohibiting fees for non-mandatory inspections, *i.e.*, inspections when the property is owner-occupied. In fact, the purpose of the regulation is to protect the FHA's interest in the property when the borrower has defaulted. According to the preamble of the final rule promulgating § 203.377, the regulations "set minimum standards for mortgage servicing acceptable to HUD," while noting that "mortgagees retain full flexibility in dealing with mortgagors." Amendments to Mutual Mortgage Insurance Regulations, 41 Fed. Reg. 49730 (Nov. 10, 1976). The language of

the regulation itself outlines the steps that servicers of FHA-insured mortgages must take to "protect and preserve" property upon learning that a loan is in default and upon determining that a property is "vacant or abandoned." 24 C.F.R. § 203.377. Even Leszanczuk's cited sources concern mortgagees' duty to perform mandatory inspections when the borrower has defaulted. The policy underlying § 203.377 is to impose obligations on mortgagees to protect the value of the property in the case of default, not to protect mortgagors from unnecessary fees. Therefore, Leszanczuk cannot show that the inspection fee offended public policy for purposes of her ICFA claim.

2. *Oppressive and Substantial Injury to Consumers*

Alternatively, Leszanczuk maintains that the inspection fee was oppressive and substantially injured her, in violation of the ICFA. Because Leszanczuk has failed to show that the inspection fee offended public policy, she must show that the fee was oppressive or caused her substantial injury to an even greater extent. *See Robinson*, 775 N.E.2d at 961. Conduct is oppressive under the ICFA if it "leave[s] the consumer with little alternative except to submit to it." *Id.* Leszanczuk has not plausibly alleged that she had little alternative except to pay the $20.00 fee. She asserts that "she was forced to pay this fee in order to bring the Mortgage current, thereby avoiding default, acceleration of her debt, and/or foreclosure." (Appellant's Br. at 27.) Contrary to this assertion, Leszanczuk was already in default when the fee was assessed—that is why Carrington conducted the drive-by inspection—and she does not allege that she was threatened with foreclosure because of her failure to pay the $20.00 fee. And, as the district court reasoned, Leszanczuk fails to explain how a fee that was

permitted by the mortgage contract can be oppressive when she "does not argue that she did not freely enter into the mortgage contract or that the contract is unconscionable."

Similarly, Leszanczuk has not shown that the inspection fee constituted a substantial injury. Under this inquiry, "the injury must: (1) be substantial; (2) not be outweighed by any countervailing benefits to consumers or competition that the practice produces; and (3) be an injury that consumers themselves could not reasonably have avoided." *Siegel*, 612 F.3d at 935. Leszanczuk maintains that Carrington's practice of charging the inspection fees, "in the aggregate, causes substantial losses to the public as a whole" (Appellant's Br. at 27–28), but a large loss cannot on its own support a claim for unfairness, *see Robinson*, 775 N.E.2d at 961. And Leszanczuk reasonably could have avoided the inspection fee by contracting with a different mortgage servicer. *See Saunders v. Mich. Ave. Nat'l Bank*, 662 N.E.2d 602, 608 (Ill. App. Ct. 1996) (finding that $20.00 overdraft fee was not unfair because plaintiff had control over whether she would be assessed the fee and was free to select another bank). Moreover, even accepting that Leszanczuk was "stuck" with the inspection fee, "[t]hat takes us back to the question whether the [fee] was oppressive," and we have concluded that it was not. *Batson v. Live Nation Ent., Inc.*, 746 F.3d 827, 834 (7th Cir. 2014).

Because Leszanczuk has not plausibly alleged that the $20.00 inspection fee offended public policy, was oppressive, or caused her substantial injury, the district court correctly concluded that she failed to state a claim under the ICFA.

### III. CONCLUSION

For these reasons, we conclude that the district court properly dismissed Leszanczuk's claims. We AFFIRM the district court's decision.